R. O. ROBINSON, Petitioner,

v.

ROBBINS PETROLEUM CORPORATION,
INC., et al., Respondents.

No. B–3783.

Supreme Court of Texas.

Nov. 14, 1973.

Rehearing Denied Dec. 19, 1973.

C. Sidney McClain, Thomas R. Hartnett, III, Dallas, for petitioner.

Colley & Lloyd, Bob M. Lloyd, Henderson, Potter, Lasater, Guinn, Minton & Knight, Charles F. Potter, Tyler, Anthony G. Riddlesperger, Houston, for respondents.

REAVLEY, Justice.

The question here is the right of the surface owner of a tract, the minerals of which are included within a secondary recovery unit, to recover damages from the operator and owners of the unit for salt water taken from his tract for purposes of waterflooding the entire unit. The litigation began with the unit operator seeking an injunction to prevent the surface owner from interfering with the operations, but the phase of the controversy before us now is the surface owner's action against the unit operator and mineral interest owners to collect damages for the salt water which has been taken to repressure the oil bearing formation. Summary judgment was entered by the trial court in favor of the operator and mineral interest owners, and the Court of Civil Appeals affirmed on the ground that their dominant estate entitled them to this use of the water. 487 S.W. 2d 794.

R. O. Robinson owns only the surface estate of an 80 acre tract by virtue of a deed to him dated August 5, 1964. This 80 acres was one of several tracts totalling 221 acres leased on April 5, 1943, to Robbins Petroleum Corporation by D. V. Wagoner and others, who were at that time the owners of the entire fee. Oil production held the lease in force, and Robinson acquired his surface estate subject thereto. It was not until after Robinson's deed that the secondary recovery units were formed. Apparently there are now three waterflood units being operated in formations at depths from 4,798 feet to 5,500 feet, and each includes all or part of the 221 acres of the Wagoner lease. The size of the three units varies from 1,295 acres to 1,807 acres. Robbins Petroleum Corporation is the operator and is using a former oil well located on the Robinson 80 acres to produce salt water to be injected and drive the three waterflood units. The record before the court on this motion for summary judgment does not show any particulars as to the use of the salt water or operation of the units. Robinson pleaded that his salt water was carried by pipelines to injection wells elsewhere and that three million barrels of water had been used in the waterflood units by the time of filing of the pleadings.

The first question presented is whether salt water is part of Robinson's surface estate. If it is owned by the mineral owners, that ends any claim by Robinson. We look first to the language of the instruments of conveyance for the answer to this question. There are two instruments: the 1943 Wagoner lease and the 1964 deed to Robinson. The lease "grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas, and all other minerals. . . ." Lessee is given "free use of oil, gas, coal, wood and water from said land, except water from Lessor's wells for all operations hereunder and the royalty on oil, gas, and coal shall be computed after deducting any so used." The deed to Robinson conveyed "the surface rights only" and excluded "all oil, gas and/or mineral rights of every kind and nature belonging to said land." Under comparable words of conveyance judicial construction has not divided the mineral from the surface according to the technical or scientific meaning. When closely related to the surface itself, gravel and limestone and even iron ore have been held not to

be embraced by mineral ownership. Acker v. Guinn, 464 S.W.2d 348 (Tex.1971); Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994 (1949); Psencik v. Wessels, 205 S.W. 2d 658 (Tex.Civ.App.1947, writ ref.).

It has been decided that water is part of the surface estate according to the ordinary and normal use of the words conveying or reserving minerals. Sun Oil Company v. Whitaker, 483 S.W.2d 808 (Tex.1972). It has been said, and is argued here, that a different result should be reached as between fresh water and salt water. See Ambassador Oil Corp. v. Robertson, 384 S.W.2d 752 (Tex.Civ.App.1964, writ ref., n. r. e., with per curiam opinion reserving this question 390 S.W.2d 472); Hudson, Salt Water is a Mineral, 50 Tex. L.Rev. 448 (1972). We are not attracted to a rule that would classify water according to a mineral contained in solution. Water is never absolutely pure unless it is treated in a laboratory. It is the water with which these parties are concerned and not the dissolved salt. If a mineral in solution or suspension were of such value or character as to justify production of the water for the extraction and use of the mineral content, we would have a different case. The substance extracted might well be the property of the mineral owner, and he might be entitled to use the water for purposes of production of the mineral. See State v. Parker, 61 Tex. 265 (1884); Cain v. Neumann, 316 S.W.2d 915 (Tex.Civ.App. 1958, no writ). In either case the water itself is an incident of surface ownership in the absence of specific conveyancing language to the contrary. And in our case the saline content has no consequence upon ownership.

We turn now to the implied easement of the mineral owners. Their ownership of the minerals carries with it the right to use the surface, including water, to the extent reasonably necessary to develop and produce the minerals. The use of water for secondary recovery operations has been upheld as the right of the mineral lessee upon this basis. Sun Oil Company v. Whitaker, 483 S.W.2d 808 (Tex.1972). In the Whitaker case, however, the parties stipulated that the waterflood operation was reasonable and proper for the production of oil from the leased premises, and the evidence tended to prove that the operation would account for the production of additional oil of the value of $3,200,000. There is no proof in the record before us now of the necessity for the waterflood operation to obtain production of oil from the lands embraced by the Wagoner lease. Without conclusive proof of that fact, the summary judgment in favor of the unit operator and owners was improper. Texas Rules Civil Procedure Rule 166–A(c); Swilley v. Hughes, 488 S.W.2d 64 (Tex. 1972). In his application to this court, Robinson has no point of error on the failure of the summary judgment proof in this respect. Robinson's complaint is against the lower court holding that the operator has the right to take salt water from this 80 acre tract to drive the oil throughout a secondary recovery unit of some two thousand acres, without his consent and without compensation for benefits flowing to premises not covered by or authorized to be pooled by the Wagoner lease. We agree that the lower courts erred in this holding.

In the Whitaker case the water was being used exclusively for the production of minerals under the premises of the lease to which the surface owner was subject. Even if the waterflood operation is reasonably necessary to produce oil from premises of the Wagoner lease, it does not follow that the operator is entitled to the use of Robinson's surface for the secondary recovery unit that includes acreage outside the Wagoner lease. This more extensive use is permitted in Oklahoma. Holt v. Southwest Antioch Sand Unit, 292 P.2d 998 (Okl.1955). We do not agree with the rule applied by the Oklahoma Supreme Court in Holt, because it fails to give due regard to the rights of the surface estate. See Getty Oil Company v. Jones, 470 S.W. 2d 618 (Tex.1971). Robinson took his surface title subject to the Wagoner lease and

the implied right of the mineral owner to make reasonable use of the surface to produce certain minerals from the land covered by the Wagoner lease. Nothing in the Wagoner lease or the reservation contained in Robinson's deed authorized the mineral owner to increase the burden on the surface estate for the benefit of additional lands. *See* 1 Williams & Meyers, Oil and Gas Law § 219.6, p. 286 (Matthew Bender 1972); Losee, Legal Problems of a Water Supply for the Oil and Gas Industry, 20th Oil & Gas Inst. 61 (Matthew Bender 1969). The fact that the Railroad Commission entered orders approving the recovery units may be relevant to the propriety of the use of the water for production from lands of the Wagoner lease, but no statute or order purports to diminish the title or otherwise extend the burden upon Robinson's surface estate.

■ Robinson, as owner of the surface, is entitled to protection from uses thereof, without his consent, for the benefit of owners outside of and beyond premises and terms of the Wagoner lease. Likewise, the rights of the mineral owners are entitled to be protected in their use of the salt water which was reasonably necessary to produce oil under the premises and terms described in the Wagoner lease. We hold that Robinson is entitled to recover the value of that portion of the salt water which has been consumed for the production of oil for owners of lands outside the Wagoner lease. If, for example, only Robinson water were used to drive the oil, and that water were consumed or lost to Robinson, the proportion of the water for which the operator would owe Robinson would be the same as the proportion of the oil recovered for lands outside the Wagoner lease. This assumes that this particular unit operation is reasonably necessary for the production of Wagoner lease minerals. If this is not the case, Robinson is entitled to damages for all of the water which has been used without his consent.

The judgments below are reversed and the cause is remanded to the trial court.