Opinion issued October 13, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00350-CV

———————————

Key Operating & Equipment, Inc., Appellant

V.

Will Hegar
and Loree Hegar,
Appellees



 



 

On Appeal from the 21st District Court

Washington County, Texas



Trial Court Case No. 33,968

 



 

MEMORANDUM OPINION

Key
Operating & Equipment, Inc. appeals from a final judgment enjoining it from
using a road that crosses Will and Loree Hegar’s property.  We reverse and render judgment in favor of Key
Operating & Equipment, Inc.

Background

Key Operating & Equipment, Inc., an oil and gas
exploration company owned by brothers Thomas and Kenneth Key, operates and
produces oil in and around Washington County, Texas.  In 1987, Key Operating[1]
leased a sixty-acre parcel in Washington County known as the Richardson Tract
and began operating the C. F. Richardson No. 1 Well thereon.   

In 1994, Key Operating
acquired oil and gas leases covering the Rosenbaum/Curbo Tract, a 191-acre
tract contiguous with the Richardson Tract. 
After reworking the Rosenbaum No. 2 Well located there, Key Operating
acquired production from this tract.  In
1994 or 1995, Key Operating built a road across the tract that it has used to
access its operations on both tracts since.[2]  To date, Key Operating has spent
approximately $150,000 on the construction and maintenance of the roadway.  

In December 2000, Thomas and
Kenneth Key, individually, acquired an undivided twelve and one-half percent
interest in the mineral estate underlying the Rosenbaum/Curbo Tract.[3]  The brothers then leased their interest in
the Rosenbaum/Curbo Tract to their exploration and production company, Key
Operating, with a voluntary pooling provision that allows Key Operating to pool
the acreage covered by the Key brother’s lease with other lands.  Three days after acquiring the lease, Thomas
Key, as president of Key Operating, executed a Declaration of Pooled Unit that
pooled ten acres from the Rosenbaum/CurboTract with thirty acres from the
adjoining Richardson Tract.  Both the
lease and the declaration were recorded in the public records of Washington
County.

In May 2002, the Hegars purchased eighty-five acres of the
Rosenbaum/Curbo Tract from Charles Curbo (Hegar Tract).[4]  Both the Rosenbaum No. 2 Well
and the road Key Operating built are on the Hegar Tract.  Will Hegar testified that they knew
at the time of purchase (1) that the property was subject to
various oil and gas leases, and (2) that Key Operating used the road to
service a well on the adjoining Richardson Tract.  He also testified that the Hegars’ themselves
currently use the road to access the home they built in 2003 or 2004 some 300
feet from the roadway.  Hegar and his
wife tolerated Key Operating’s use of the roadway until Key Operating drilled a
new well on the Richardson Tract that dramatically increased traffic.  As Hegar notes, “We’re
trying to raise a family and we can’t do it with a highway going through our
property.”  

In December 2007, the Hegars filed
suit against Key Operating for trespass and sought a permanent injunction
against Key Operating’s continued use of the roadway.  Although it began as a jury trial, the
parties agreed to withdraw the case from the jury before the defense rested and
the balance of the case was tried to the bench. 
At the trial’s conclusion, the court permanently enjoined Key Operating
from using the Hegar’s property surface, including the roadway, “for any
purpose relating to the extraction, development, production, storage,
transportation, or treatment of minerals produced from an adjoining”
tract.  The trial court filed findings of
fact and conclusions of law at Key Operating’s request and this appeal ensued. 

Discussion

In three issues, Key Operating
contends that (1) the trial court erred when it enjoined Key Operating from
using the surface of the Hegars’ property; (2) the Hegars do not have standing
to challenge the validity of the pooling agreement; and (3) assuming that it
was necessary for the Hegars to prove that no oil was being produced from the
Hegars’ property through the wells on the adjoining property, the Hegars’
evidence was insufficient.

 

Standing

We
begin by addressing the Hegars’ standing.  Key Operating
argues that the Hegars do not have standing to complain about the formation of the pooled unit because
they are not a party to the agreement. 
The Hegars, however, are not challenging the formation of the pooling
unit.  Rather, they contend that Key Operating
has no right to use the surface of their tract to benefit the tract of another,
even if all or a portion of those tracts are pooled together.  As surface estate owners, the Hegars
unquestionably have standing to bring this action for trespass to real property.  We overrule Key Operating’s second issue.

Key Operating’s Right to Use the
Surface Estate

Key Operating contends that, because
it has the right to full use of the road to access its operations by virtue of
the pooling agreement, it cannot be a trespasser and thus, the court’s order
enjoining it from use of the road is error.

Texas law is well-established that
owners of a dominant mineral estate have a right to use as much of the servient
surface estate as is reasonably necessary to produce and remove the minerals
from the property.  See Ball v. Dillard, 602 S.W.2d 521, 523 (Tex. 1980) (citing Harris v. Currie, 142 Tex. 93, 176
S.W.2d 302 (1943) (noting
that grant of minerals would be worthless to grantee if he could not enter upon
the land for exploration and extraction of minerals granted)).  This necessarily includes the
rights of ingress and egress upon the land for the exploration and
production of oil and gas.  See id. (holding surface lessee unreasonably
interfered with mineral lessee’s right to access to land for mineral
development purposes by locking gate to only usable road into property).[5]  

The Hegars and the Key brothers, as owners of an undivided
interest in the minerals under the Hegar Tract, are co-tenants and, as such,
have the right to extract minerals from common property without first obtaining
the consent of their co-tenants.  See Byrom
v. Pendley, 717 S.W.2d 602, 605 (Tex. 1986).  This includes the right to lease their
mineral interests.  Id.[6]

Here, the Key brothers leased their interest in the mineral
estate to Key Operating.  The terms of
the lease not only give Key Operating the rights of
ingress and egress with respect to the leasehold, but it also expressly allows Key
Operating to pool acreage under the lease with lands in the immediate
vicinity.  The lease further provides
that “production of oil or gas from any part of a pooled unit which includes
all or a portion of the land covered by this lease, . . . shall be considered .
. . production of oil or gas from land covered by this lease whether or not the
well or wells be located on the premises covered by this lease,” and “the
entire acreage constituting such unit or units . . . shall be treated for all
purposes. . . as if the same were included in this lease.”  Thus, under the terms of the lease, Key
Operating’s use of the surface of the Hegar Tract to benefit a pooled unit,
which includes a portion of that tract, necessarily benefits the mineral estate
of the Hegar Tract, regardless of where the wells are located.  

As the mineral lessee,
Key Operating has a right to use the road across the Hegar Tract to produce
and remove minerals from under the Hegar Tract. 
Because the lease not only allows Key Operating to create pooling units,
but also expressly recites that the acreage constituting
such units shall be treated as if those acres were included in the lease, the lease
terms allow Key Operating to use the surface of the Hegar Tract for the
production of oil and gas from the property, even if the use also benefits
another tract, provided that other tract has been pooled with all or some of
the Hegar Tract.  See Miller
v. Crown Cent. Petrol. Corp., 309 S.W.2d 876,
878–79 (Tex. Civ. App.—Eastland 1958, writ dism’d by agr.) (holding
lessee had right to lay pipeline across leased property even though
pipeline also benefited other land because other land was pooled with leased
property). 

Notably, the Hegars do not dispute
Key Operating’s right to use the road to produce and extract minerals from
under their tract.  Rather, citing to Robinson v. Robbins Petrol. Corp., 501
S.W.2d 865, 867 (Tex. 1973), they contend that Key Operating cannot use the
Hegar tract surface to produce minerals from the adjoining Richardson Tract,
notwithstanding the pooling agreement. 
The Robinson court held that a
mineral lessee could not use the surface of an eighty-acre tract to operate a
waterflood unit that included acreage outside the mineral lease covering the
tract. Id. at 868.

In Robinson, however, the unit was created after the surface owner obtained his title.  The court noted that although the surface
owner obtained his title subject to a mineral lease and, therefore, subject to
the implied right to use his surface to produce minerals covered by that lease,
nothing in his chain of title indicated that the surface of the property could
be used to support oil and gas production beyond the boundaries of the lease,
and the surface owner never consented to this increased burden.  See id.
at 867−68.  Here, however, both the lease and the pooling
declaration, which pooled ten acres of the Hegar Tract, were in place and
recorded in the county records prior to the Hegars’ 2002 purchase of the
property.  As such, the Hegars acquired
title to the Hegar Tract subject to the existing oil and gas lease between the
Key brothers and Key Operating, and the declaration of pooling executed by Key
Operating, as allowed under the lease.  See Amoco Prod. Co.
v. Alexander, 622 S.W.2d 563, 572 (Tex. 1981)
(stating that oil and gas lease creates interest in real property); MCZ,
Inc., v. Triolo, 708
S.W.2d 49, 52 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.)
(stating that pooling results in cross conveyance of interests in
land).  Whether or not the Hegars had actual knowledge of the
lease or the pooling agreement is immaterial. 
See
Cooksey v. Sinder, 682 S.W.2d 252, 253 (Tex. 1984) (noting that
purchasers are charged with knowledge
of contents of recorded instruments and terms of deeds in
chain of title); Westland Oil
Dev. Corp. v. Gulf Oil Corp.,
637 S.W.2d 903, 908 (Tex. 1982) (noting that purchaser is bound by every
recital, reference, and reservation contained in, or fairly disclosed by, any
instrument which forms essential link in chain of title).  

Because Key Operating
has the legal right to use the roadway across the Hegar Tract for purposes of
exploration and production of oil and gas from the pooled unit, which includes
a portion of the Hegar Tract, Key Operating’s use of the road cannot constitute
trespass and the trial court erred in enjoining Key Operating from its use.  We sustain Key Operating’s first issue. 

Having determined that
the trial court erred in enjoining Key Operating from using the roadway, we
need not address Key Operating’s remaining issue. 

 

 

conclusion

We reverse the judgment of the
trial court and render judgment in Key Operating’s favor.

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.











[1]           The lease was executed by Key Operating’s
predecessor in interest.  However, for the sake of simplicity, we will
refer to both entities as Key Operating. 





[2]           The
Richardson Tract is only accessible through an adjoining property.  Prior to 1994/1995, Key Operating had been accessing the
Rosenbaum No. 2 Well and the Richardson Tract by way of a road, traversing
property owned by the Ullrich family. 
After the roadway across the Rosenbaum/Curbo Tract was completed, Key
Operating allowed its easement across the Ullrich property to expire.  





[3]           The Key brothers acquired their
interest from Randy Boatright who, according to Kenneth Key, approached him in
2000 and was looking to sell the twelve
and one-half percent interest which he acquired in the Rosenbaum/Curbo
property’s mineral estate in 1994. 





[4]           In addition to purchasing the entire surface
estate, the Hegars also purchased an undivided one-fourth interest in the
mineral estate.  





[5]           A mineral lessee’s use of the
surface estate should be exercised with due regard for the rights of the
surface estate’s owner.  Getty Oil Co. v. Jones, 470 S.W.2d 618,
621 (Tex. 1971).  This concept of “due
regard,” known as the accommodation doctrine, was first articulated in Getty Oil and balances the rights of the
surface owner and the mineral owner in the use of the surface.  Id.
at 622.  The Hegars do not dispute Key Operating’s right to use the roadway to
produce and remove minerals from under the Hegar Tract nor do they argue
that Key Operating’s use of the road is unreasonable pursuant to the
accommodation doctrine.  Rather, they
contend that Key Operating has no right to use the road to extract minerals
from an adjoining property.  





[6]           Collectively,
the Hegars and the Key brothers hold an undivided interest in a little over
one-third of the mineral estate.  The
remaining two-thirds is held by various other cotenants—each of whom also has the unilateral right to
use as much of the surface estate as is
reasonably necessary to produce and remove the minerals from the property.