# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0156

════════════

KEY OPERATING & EQUIPMENT, INC., PETITIONER,

v.

WILL HEGAR AND LOREE HEGAR, RESPONDENTS

══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

══════════════════════════════════════════════════

**Argued February 4, 2014**

JUSTICE JOHNSON delivered the opinion of the Court.

At issue in this case is whether, when parts of two mineral leases have been pooled but production is from only one lease, the mineral lessee has the right to use a road across the surface of the lease without production in order to access the producing lease. The trial court determined that the lessee does not and granted declaratory and injunctive relief. The court of appeals affirmed. Concluding that the lessee has such a right, we reverse and render.

## I. Background

Key Operating and Equipment, Inc., (Key) has operated the Richardson No. 1 well on the sixty-acre Richardson tract since 1987. In 1994 Key acquired oil and gas leases on a 191-acre contiguous tract—the Curbo/Rosenbaum Tract—and reworked the Rosenbaum No. 2, an existing

well on that property. That same year Key built a road on the Curbo/Rosenbaum tract to access both the Richardson No. 1 and the Rosenbaum No. 2. The Rosenbaum No. 2 stopped producing in 2000, and Key's lease on the Curbo/Rosenbaum tract expired. But also in 2000, Key's owners purchased an undivided twelve-and-a-half percent interest in the mineral estate of the Curbo/Rosenbaum Tract, which they promptly leased to Key. The lease gave Key the right to pool the minerals with other property in the immediate vicinity. Key then pooled its leased minerals under ten acres from the Curbo/Rosenbaum tract with its leased minerals under thirty acres from the adjoining Richardson Tract.

In 2002, Will and Loree Hegar bought eighty-five acres of the Curbo/Rosenbaum Tract (the Hegar Tract). Their acreage included the road Key used to access the Richardson No. 1, and they were aware when they bought the tract that Key used the road in its mineral operations.

In 2003 or 2004, the Hegars built a house on their acreage, used the road to access it, and for several years took no action to restrict Key's use of the road. That forbearance stopped when Key drilled the Richardson No. 4 well on the Richardson tract. Following that drilling, traffic on the road increased, prompting the Hegars to file suit claiming that by using the road, Key was trespassing. They sought a declaratory judgment that Key had no legal right to "access or use the surface of the Hegar Tract in order to produce minerals from the Richardson Tract." At trial, the Hegars called a petroleum engineer who testified that the Richardson No. 4 was the only well on the pooled acreage with significant current production; the size of the reservoir from which it produced was three-and-a-half surface acres; the well's drainage area did not reach the Hegars' property; and the well was not draining oil from the Hegars' property.

The trial court enjoined Key from using the part of the road that was on the Hegars' property for any purpose related to producing minerals from the adjoining Richardson Tract. The court entered findings of fact and conclusions of law in support of its order, including findings and conclusions that (1) Key's use of the surface of the Hegar Tract to access the Richardson Tract constituted a trespass, (2) the use of the surface of the Hegar tract was not reasonably necessary to extract minerals from beneath the Hegar Tract, and (3) no minerals were being extracted from beneath the Hegar tract by wells located on the Richardson Tract.

Key appealed. The court of appeals initially reversed, but granted the Hegars' motion for rehearing, withdrew its opinion, and affirmed. 403 S.W. 3d 318. The court held that Key had the right to use the Hegars' surface to produce oil only from beneath the Hegar tract, determined that evidence supported the trial court's finding that Key was only producing oil from the adjacent Richardson Tract, and affirmed the trial court's conclusion that Key had no right to use the Hegars' surface to produce minerals exclusively from the Richardson Tract. *Id.* at 336. The court also held that Key's lease and pooling agreements, which were not part of the Hegars' chain of title, could not contractually expand Key's right to use the Hegars' surface. *Id.* at 326.

Key petitioned this Court for review,[1] arguing that it has the right to use the Hegars' surface estate in producing minerals from any part of the pooled unit. It asserts that the court of appeals erred by relying on the accommodation doctrine and in its application of *Robinson v. Robbins Petroleum Corp.*, 501 S.W.2d 865 (Tex. 1973). Key also claims that the court of appeals incorrectly

---

[1] The Texas Oil and Gas Association submitted an Amicus Curiae brief in support of Key's petition for review.

3

assumed that because the record did not contain the original document severing the mineral and surface estates, Key's predecessor did not have the right to pool and Key did not have the right to use the road.

The Hegars first respond that because Key failed to brief its opposition to the Hegars' motion for rehearing in the court of appeals, it waived its current arguments. They also argue that a mineral owner has an implied easement to use the surface of a property *only* if production is from that property, which it is not in this case. As for the absence from the record of the document severing the mineral estate, the Hegars claim that they met their burden of proof to establish they are the exclusive owners of the surface estate and Key did not argue in the lower courts that the missing document would prove its permission to use the road.

## II. Discussion

### A. Key's Failure to Oppose Rehearing

After the Hegars filed a motion for rehearing, the court of appeals requested a response from Key. Key did not file one. The Hegars assert that the arguments Key raises in this Court should have been briefed in opposition to their motion for rehearing, and the arguments are waived because Key did not do so. We disagree.

An issue raised in this Court must have been assigned as error in the court of appeals if it originated in the trial court. TEX. R. APP. P. 53.2(f). The Hegars do not assert that Key failed to present its issues to the trial court and the court of appeals on original submission there.

Further, the Rules of Appellate Procedure provide that a motion for rehearing is not a prerequisite to filing a petition for review in this Court, nor is it required to preserve error. TEX. R.

4

APP. P. 49.9; *see Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex. 2004) ("A complaint that arises from the court of appeals' judgment itself, however, may be raised either in a motion for rehearing in the court of appeals *or* in a petition for review in this Court." (emphasis added)). The Rules of Appellate Procedure do not require a response to a motion for rehearing on pain of waiving the right to challenge the appellate court's judgment, and neither do we. Key did not waive its right to petition this Court for review of the court of appeals' judgment, so we turn to its arguments on the merits.

## B. Key's Use of the Surface

The owner of the dominant mineral estate in a tract has the right to go upon the surface of that land to produce and remove the minerals, and also the incidental rights necessary for that production and removal. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248-49 (Tex. 2013). The mineral lessee's incidental rights include the right to use as much of the surface as is reasonably necessary to produce the minerals. *Id.* at 249.

Key argues that because its production from a tract pooled with others is legally treated as production from each tract within the unit, it has the right to use the surface of any of the units' pooled tracts in its production activities. We agree.

### 1. Pooling

Mineral lessees of multiple tracts may pool some or all of the tracts by combining them into a single unit, provided pooling is authorized by the leases. *Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 170 (Tex. 1999). The policy of Texas is to encourage the recovery of minerals, and the Legislature has made waste in the production of oil and gas unlawful. *See R.R. Comm'n of Tex. v.*

5

*Manziel*, 361 S.W.2d 560, 569-70 (Tex. 1962); *see also* TEX. NAT. RES. CODE § 85.045. Pooling is one method to prevent waste. *See* TEX. NAT. RES. CODE § 102.011 (providing that the Railroad Commission may establish a pooled unit in certain circumstances to prevent waste).

Both the Curbo/Rosenbaum and Richardson leases permit pooling.[2] The Curbo/Rosenbaum lease provides that Key has "the right and power to pool or combine the acreage covered by this lease. . . with any other land, lease, or leases in the immediate vicinity thereof." The primary legal consequence of pooling is that "production and operations anywhere on the pooled unit are treated as if they have taken place on each tract within the unit." *Tichacek*, 997 S.W.2d at 170 (citing *Southland Royalty Co. v. Humble Oil & Ref. Co.*, 249 S.W.2d 914, 916 (Tex. 1952)).

### 2. Title Documents

The court of appeals first considered whether Key had the contractual right to use the road across the Hegars' property by virtue of its lease and pooling agreement. 403 S.W.3d at 325. The court concluded that the Hegars were not bound by the lease or the pooling agreement because those documents were not executed at the time the mineral and surface estates were first severed and, therefore, they were not within the Hegars' chain of title. *Id.* at 326. The court further considered Key's implied surface rights and concluded that those rights did not allow Key to use the road across the Hegar tract. *Id.* at 333.

As related to the title documents, Key argues that the law does not require recording a mineral lease in a surface purchaser's chain of title. However, we need not decide whether the lease

---

[2] The Richardson lease is not in the record, but the declaration of pooled unit states that both leases grant the right to pool. The Hegars do not argue that the Richardson lease does not grant the right to pool or that the pooling was in bad faith.

was required to be in the Hegars' chain of title in order to bind them. As we explain below, Key's owners, as the mineral owners, and Key, as the mineral lessee, have implied property rights to use the Hegars' surface.

### 3. Implied Surface Rights

Applying the "primary legal consequence" of pooling to this case—that production anywhere on a pooled unit is treated as production on every tract in the unit—we conclude that once pooling occurred, the pooled parts of the Richardson and Hegar Tracts no longer maintained separate identities insofar as where production from the pooled interests was located. So the legal consequence of production from the pooled part of the Richardson Tract is that it is also production from the pooled part of the Hegar Tract, and the Hegars do not contend that Key did not have the right to use the road to produce minerals from their acreage. Because production from the pooled part of the Richardson Tract was legally also production from the pooled part of the Hegar tract, Key had the right to use the road to access the pooled part of the Richardson tract. *See Prop. Owners of Leisure Land v. Woolf & Magee, Inc.*, 786 S.W.2d 757, 760 (Tex. App.—Tyler 1990, no writ) (holding that an implied surface easement of reasonable usage extended to the surface of tracts that had been pooled with a tract contained a producing well).

The court of appeals recognized that a mineral lessee's implied surface easement extends to the surface of the entire pooled area. 403 S.W.3d at 325. But the court concluded, and the Hegars argue, that Key did not have an implied right to use the Hegars' surface to produce minerals only from another tract, which the evidence showed and the trial court found was the situation here. *Id.* at 331. The court of appeals concluded that Key's surface easement was only implicated when Key

7

used the road to produce oil from beneath the Hegar Tract. *Id.* This conclusion conflicts with the legal consequence of pooling that production anywhere on the pooled unit and operations incidental to that production are regarded as taking place on each pooled tract.[3] *Tichacek*, 997 S.W.2d at 170.

The Hegars argue that their position is supported by *Robinson v. Robbins Petroleum Corp.*, in which this Court held that a surface tract may not be used for production on adjacent tracts without the surface owner's consent. 501 S.W.2d 865 (Tex. 1973). In *Robinson*, R.O. Robinson owned an eighty-acre surface estate subject to the Wagoner mineral lease. *Id.* at 866. The Wagoner lease included adjacent tracts that had been leased to Robbins Petroleum when the tracts were all owned by the same owners. *Id.* Sometime after Robinson purchased his surface estate, three waterflood units that did not include the Wagoner Lease were formed. *Id.* The well operator began using a former oil well on the Robinson Tract to produce salt water that it then used in the three waterflood units that were not part of the Wagoner Lease. *Id.* This Court held that "Robinson, as owner of the surface, is entitled to protection from uses thereof, without his consent, for the benefit of owners outside of and beyond premises and terms of the Wagoner lease." *Id.* at 868.

The Hegars assert that *Robinson* prohibits a mineral lessee from using one surface to aid operations on another tract. But *Robinson* is distinguishable from the situation here. The minerals under Robinson's surface had not been, and could not be, pooled with tracts where the water was being used. *Id.* at 867 ("Robinson's complaint is against the lower court holding that the operator has the right to take salt water . . . without his consent and without compensation for benefits flowing

---

[3] The legal consequences of pooling may be challenged by means of a claim that the lessee pooled in bad faith. *See*, *e.g.*, *Tichacek*, 997 S.W.2d at 168-69; *see also Elliott v. Davis*, 553 S.W.2d 223, 224 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.). The Hegars have not asserted such a claim.

8

to premises *not covered by or authorized to be pooled* by the Wagoner lease." (emphasis added)). And Robinson himself recognized that the lack of pooling was significant, arguing in the court of appeals that he had authority to control use of the water subject to a lessee's water use to assist with production under his tract or "underlying tracts pooled therewith." *Robinson v. Robbins Petroleum Corp.*, 487 S.W.2d 794, 797 (Tex. App.—Tyler 1972), *rev'd* 501 S.W.2d 865 (Tex. 1973). *Robinson* does not control here.

Based on a statement in *Robinson*, the Hegars also argue that because Key's owners never owned a portion of the Hegars' surface estate, their title to the minerals did not empower them to broaden the burdens on the Hegars' surface to benefit adjacent tracts. The statement on which they rely is as follows:

> Robinson took his surface title subject to the Wagoner lease and the implied right of the mineral owner to make reasonable use of the surface to produce certain minerals from the land covered by the Wagoner lease. Nothing in the Wagoner lease or the reservation contained in Robinson's deed authorized the mineral owner to increase the burden on the surface estate for the benefit of additional lands.

*Robinson*, 501 S.W.2d at 867-68. But the Hegars took their surface title subject to the mineral lease assigned by Key's owners to Key. *See Day & Co. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 669 (Tex. 1990) (holding that the right to lease—the executive right—is a right of the mineral estate and is an interest in property, not a product of contract); 1 Ernest E. Smith & Jacqueline Lang Weaver, TEXAS LAW OF OIL AND GAS § 2.1[A][2] ("[T]he owner of a severed surface estate has no right to . . . participate in executing oil and gas leases."). And unlike the lease in *Robinson*, the lease to Key authorized it to pool the acreage with other tracts, which it did and which provision gave rise to Key's right to use the road.

9

Further, because they owned part of the minerals under the Hegar tract, Key's owners had the right to use the surface of the tract to develop and remove minerals from it, including the right of ingress and egress to do so. *See Lesley v. Veterans Land Bd.*, 352 S.W.3d 479, 481 n.1 (Tex. 2011). They also had the right to pool. *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 422-23 (Tex. 2008). Thus Key, through its mineral lease, also had the right of ingress and egress, *Ball v. Dillard*, 602 S.W.2d 521, 523 (Tex. 1980), and the right to pool. *Tichacek*, 997 S.W.2d at 170. The right of ingress and egress includes the right to ingress and egress over the surface of any pooled acreage for the purpose of producing minerals from any part of the pooled acreage. Accordingly, Key's owners did not increase the burdens on the surface estate by leasing their mineral interest to Key, nor did Key increase the burdens by pooling the Richardson and Curbo/Rosenbaum tract minerals.

### C. Accommodation Doctrine

Under the accommodation doctrine, a surface owner may obtain relief on a claim that the mineral lessee failed to accommodate an existing surface use by proving that the existing use is precluded or substantially impaired by the mineral lessee and no reasonable alternative method is available to continue the existing use. *Merriman*, 407 S.W.3d at 249.

Key asserts that the accommodation doctrine was not raised in the trial court or the court of appeals, and even if it were, the court of appeals erred by relying on it to hold that Key trespassed on the Hegars' surface estate. The Hegars agree that the doctrine was not raised below and is not properly before us.

10

Because it was not raised in the trial court, the accommodation doctrine as related to Key's use of the Hegar Tract's surface was not properly before the court of appeals and we need not determine whether it was correctly applied.  *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties.").

## V.  Conclusion

Key has the right to use the road across the pooled Hegar Tract for production of minerals from all the acreage with which it is pooled.  We reverse the court of appeals' judgment and render judgment for Key accordingly.

_____
Phil Johnson
Justice

**OPINION DELIVERED:**  June 20, 2014

11