ACCEPTED
12-15-00201-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
10/15/2015 3:13:06 PM
Pam Estes
CLERK

NO. 12-15-00201-CV

_____

IN THE TWELFTH COURT OF APPEALS

TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
10/15/2015 3:13:06 PM
PAM ESTES
Clerk

_____

Oliver Lane Chambers, Donna Kay Chambers-Jones, Rhonda Thompson,
Clinton L. Chambers and wife, Brandi N. Chambers,
Appellants,

v.

San Augustine County Appraisal District,
Appellee.

_____

On Appeal from the 273rd Judicial District Court
San Augustine County, Texas
Trial Court No. CV-13-9481

---

**APPELLEE'S BRIEF**

---

GUIDRY, BATES & HOYT
ATTORNEYS, LLP
Jeff Bates
State Bar No. 01905200
bates@gbhattorneys.com
118 E. Hospital Street, Suite 100
Nacogdoches, Texas 75961
(936) 560-6954 telephone
(936) 560-5996 facsimile

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………ii

INDEX OF AUTHORITIES………………………………………………………...iii

STATEMENT ON ORAL ARGUMENT ...………………………………………...iv

STATEMENT OF THE CASE…………………………………………………….v

STATEMENT OF FACTS…………………………………………………………...1

SUMMARY OF THE ARGUMENT…………………………………………..…2

ARGUMENT AND AUTHORITIES………………………………………………...3

I.    THE TRIAL COURT DID NOT ERR IN GRANTING
THE APPRAISAL DISTRICT'S TRADITIONAL
MOTION FOR SUMMARY JUDGMENT…………………………………3

    LEASE PROVISIONS…………………………………………………...3

    UNIT DECLARATIONS…………………………………………….…...3

    METHOD OF TAXATION……………………………………………...5

    APPELLANTS' LEASE INTERPRETATION………………………..……6

    LIMITED ISSUES…………………………………………..………..…8

CONCLUSION AND PRAYER…………………………………………..…9

CERTIFICATE OF COMPLIANCE………………………………………….…10

CERTIFICATE OF SERVICE…………………………………………………...10

APPENDIX………………………………………………………………………11

    Texas Attorney General Opinion DM-490 (1998)…………………………12

# INDEX OF AUTHORITIES

*Cases:*

*Hooks v. Samson Lone Star*, 58 Tex. Sup. Ct. J. 252 (Tex. 2015)…………………5

*Key Operating & Equip., Inc. v. Hegar*, 435 S.W.3d 794 (Tex.2014)……….……6

*London v. Merriman*, 756 S.W.2d 736 (1988)……………………………….…..5

*Minchen v. Fields*, 162 Tex. 73 (1961)……………………………………………5

*Montgomery v. Rittersbacher*, 424 S.W.2d 210 (Tex. 1968)………………………6

*Pipe Line Co. v. Tichacek*, 997 S.W.2d 166 (Tex.1999)…………………………...6

*Veal v. Thomason*, 159 S.W.2d 472 (Tex. 1942…………………………………7

*Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419 (Tex.2008)………………...7


*Other Authorities:*

Texas Attorney General Opinion DM-490 (1998)…………………………………5

*Basics of Oil and Gas Leases – The Producers 88 Lease Form
and its Mutant Progeny*, Terry I. Cross, State Bar of Texas,
Oil Gas and Energy Resources 101, October 17, 2012, Houston…………………..8

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully requests oral argument.

# STATEMENT OF THE CASE

Appellants complain that they do not owe property taxes in San Augustine County because the surface portion of the real estate for which the minerals are being taxed is within the boundary of Shelby County. It is undisputed that the surface estate of Appellants' real estate lies exclusively within Shelby County. However, the mineral interest which is being taxed has been unitized, and a portion of the Unit lies within San Augustine County. Because Appellants' lands have been unitized and pooled with other lands, the minerals are appropriately taxed in both San Augustine and Shelby counties in proportion to the percentage of the unit lying within each county.

## STATEMENT OF FACTS

Appellant's Statement of Facts is correct.

This appeal arises from a summary judgment from the District Court relating to a protest of property taxes in the following amounts:

Donna Kay Chambers $14.49 [CR 14]

Oliver Lane Chambers $14.49 [CR 16]

Rhonda Thompson $14.49  [CR 18]

Clinton and Brandi Chambers $13.99 [CR 20]

## SUMMARY OF THE ARGUMENT

Appellants' leases provide that the lessee has the right to pool lessor's lands with other lands. Appellants' leases were, in fact, pooled with other lands and a designation of unit was appropriately filed. Because the unit contains pooled lands within both Shelby and San Augustine counties, it is appropriate for both counties to tax a portion of the mineral interests within the unit in the percentage of total surface area contained within each county.

I.     **The Trial Court Did Not Err in Granting the Appraisal District's Traditional Motion for Summary Judgment.**

## LEASE PROVISIONS

Appellants' mineral leases [CR 82, 85, and 88] provided their lessee the right at its <u>option to pool or unitize</u> land covered by the lease with other land.  The leases provide:

> "Lessee is hereby granted the right, at its option to pool or unitize any land covered by this lease with any other land covered by this lease, and/or with any other land, lease, or leases, as to any or all minerals or horizons…".  [ CR 82, 85, and 88]

The lease further provides that:

> "<u>Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease</u>.  There shall be allocated to the land covered by this lease within each unit, after deducting any used in lease or unit operations, which the number of surface acres in such land (or in each such separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease." [CR 82, 85, and 88]

## UNIT DECLARATIONS

It is undisputed that the Chambers' interests subject to this appeal are included in the Tigers DU No. 1H Unit ("Tigers Unit") and the Wolfpack (SL) DU

No. 1H Unit ("Wolfpack Unit"). The Unit Designations are included in the Summary Judgment evidence. [CR 97, 104, and 114]. (The "Wolfpack Unit also had an amended Designation of Unit which is included in the evidence). From the face of the documents, the unit designations were in place prior to and on January 1st of the tax year subject to this protest. The designations also demonstrate the San Augustine/Shelby county boundary consistent with the description set forth in Appellants' Statement of Facts. [CR 109, 118]

The Lessees of Appellants Mineral Interests, and all other lessees in the Unit, XH, LLC, XTO Energy Inc., HHE Energy Company, and Southwestern Energy Production Company certified pursuant to Railroad Commission requirements that they held the leases in the unit and that each of said leases:

> "provide that the lessee shall have the right and power to designate, pool or combine, as to the gas rights therein and thereunder, the acreage coverage thereby, or portions thereof, with other land, lease, or leases in the immediate vicinity thereof, in order to form a gas unit…". [CR 97, 114]

By filing the Unit Designation, lessees invoked those rights. Utilizing their rights under the leases, the Lessees did pool said gas rights and created the unit. As provided in the Unit Designation, "production from the unit shall be allocated proportionately among all of the tracts within the unit and in proportion which the number of surface acres in each such tracts bears to the total number of surface acres in the unit." [CR 97, 115]

4

Both of the designations demonstrate that the leases included therein:

"provide that the lessee shall have the right and power to designate, pool or combine, as to the gas rights therein and thereunder, the acreage covered thereby, or portions thereof, with other land, lease, or leases in the immediate vicinity thereof, in order to form a gas unit or units of the size and type hereinafter described provided that lessee shall execute an instrument in writing identifying and describing such acreage". [CR 97, 114]. The lessee found it "necessary and advisable" to "pool and combine said leases and the lands covered thereby".

The designation further provides that:

"lessee, acting under and by future of the power and authority conferred and granted by the provisions of said leases…<u>does hereby designate, pool, and combine</u> said leases…and the lands covered thereby…for the purpose of developing and operating the lands and leases for the production, storage, processing, and marketing of gas…". The designation further provides that <u>"production from the unit shall be allocated proportionately among all of the tracts within the unit in the proportion which the number of surface acres in each of such tracts bears to the total number of surface acres in the unit"</u>.

## METHOD OF TAXATION

The method of taxation used herein has been consistently applied by appraisal districts around the state and was approved in Texas Attorney General Opinion DM-490 and included in the Appendix attached hereto. [CR 121].

The effect of unitization of minerals was also discussed in *London v. Merriman*, 756 S.W.2d 736 (1988) and *Minchen v. Fields*, 162 Tex. 73 (1961).

The Texas Supreme Court recently discussed the concept of pooling in *Hooks v. Samson Lone Star*, 58 Tex. Sup. Ct. J. 252 (Tex. 2015). They stated:

5

"To resolve this dispute, we apply the " 'primary legal consequence' of pooling to this case---that production anywhere on a pooled unit is treated as production on every tract in the unit." See *Key Operating & Equip., Inc. v. Hegar*, 435 S.W.3d 794, 798-99 (Tex.2014) (quoting See *Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 170 (Tex.1999)). The reason a lessor receives royalties under a pooling agreement, even if no production occurs directly on that lessor's tract, is because production elsewhere on the pooled unit is attributed to the lessor's tract. And the reason the lessor receives royalties on production attributed to the lessor's tract is because of the underlying lease. It follows that a lessor's royalty on production from the unit as a whole reflects the lessor's royalty on production from its individual tracts in proportion to the size of the tracts relative to the overall unit. This accords with the nature of pooling, which "effects a cross-conveyance among the owners of minerals under the various tracts of royalty or minerals in a "pool so that they all own undivided interests under the unitized tract in the proportion their contribution bears to the unitized tract." *Montgomery v. Rittersbacker*, 424 S.W.2d 210, 213 (Tex.1968). In other words, the royalty owed on production from the whole unit is necessarily tied to the royalty owed on production from the lessor's individual tracts. To increase one is to increase the other."

Having pooled and unitized their mineral interests with other mineral interests lying within the boundaries of San Augustine Texas, Appellants have the obligation to pay taxes on said mineral interests within the Unit to the extent they lie within the boundaries of San Augustine Texas.

### APPELLANTS' LEASE INTERPRETATION

While Appellee believes that a cross conveyance was created by unitization, Appellants' reliance upon the words "cross conveyance" is not dispositive. The fact that the tracts have been pooled and unitized and are treated as a single unit for all purposes except payment of royalties is sufficient to permit proportional

6

taxation of the unit by the counties. The term cross conveyance (as opposed to unitize or pool) becomes relevant only when issues arise relating to potential termination of the unit or expiration of a lease as occurred in *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419 (Tex.2008).

The language that Appellant describes as "anti-cross conveyance" language reads:

> "The production so allocated shall be considered for all purposes, including the payment or delivery of royalty, to be the entire production of pooled minerals from the portion of said land covered hereby and included in said unit in the same manner as though produced from said land under the terms of this lease. Notwithstanding such allocation, the formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring <u>any interest under this lease</u> (including, without limitation, any shut in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interests in land not covered by this lease." (emphasis added) [CR 131, 135, 139].

Appellee does not concede that the language negates a cross conveyance. The words "cross conveyance" do not even exist in the language relied upon by Appellant. Nonetheless, in a discussion of a lease provision from another lease form which actually reads: "Pooling hereunder shall not constitute a cross-conveyance of interest", one author wrote the following:

> The last sentence, negating a cross-conveyance, is meant to fortify the authority to modify units. Generally, in Texas, pooling does accomplish a cross-conveyance, *Veal v. Thomason*, 159 S.W.2d 472

7

(Tex. 1942), and if a cross-conveyance is accomplished, then the modification of the unit, i.e., "unconveying," is harder to reconcile. Disclaiming that pooling is a cross-conveyance is an attempt to keep the relationship resulting from the pooling as merely contractual in nature. *Basics of Oil and Gas Leases – The Producers 88 Lease Form and its Mutant Progeny*, Terry I. Cross, State Bar of Texas, Oil Gas and Energy Resources 101, October 17, 2012, Houston.

Another interpretation of the language relied upon by Appellants to simply provide that each lessor shall retain their contractual interest "under their lease", and each shall be paid for their proportionate share of the production according to their lease despite unitization." In other words, each lessor within the unit shall be paid according to the terms of their specific lease, and that their rights under their lease shall not be cross conveyed to another lessor in the unit who may have received a better or worse lease. Whatever rights each lessor may have regarding the right to receive shut-in royalties, for example, are not transferred to other members of the unit.

## LIMITED ISSUES

Appellants do not contend that their total tax is in excess of 100% valuation. Appellants do not contest the methods of appraisal. Appellants have not contested the validity of the unit for any purpose other than assessment of tax. Appellants' sole argument is that their mineral estate should be taxed in Shelby County because their surface estate is within Shelby County and despite the unitization and pooling with lands that cross the county line. There is no question of fact or law and

Appellee is entitled to summary judgment on the pleadings. Appellee incorporates Plaintiff's Original Petition by reference herein. [CR 5].

## CONCLUSION AND PRAYER

The contractual language in the lease allows the lessee to pool or unitize the lease with other lands. The lessee in this case did pool and unitize. A portion of the unit which was created lies within the boundary of the entities for which the San Augustine Appraisal District has taxing authority, and did so on January 1st of the year of the protest.

Appellee prays that the Summary Judgment be affirmed and for such other and further relief to which it may be entitled.

Respectfully submitted,

GUIDRY, BATES & HOYT
ATTORNEYS, LLP
118 E. Hospital Street, Suite 100
Nacogdoches, Texas 75961
(936) 560-6954 telephone
(936) 560-5996 facsimile
bates@gbhattorneys.com


_____*/s/ Jeff Bates*_____
Jeff Bates
State Bar No. 01905200

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the limitation of Tex.R.App.P. 9.4(i)(2)(B) because this brief contains 1,943 words, excluding the parts exempted by Tex.R.App.P. 9.4(i).

*/s/ Jeff Bates*_____
Jeff Bates

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief has been provided to counsel listed below via electronic service on this 15th day of October, 2015.

April Gregston Prince
Mettauer Law Firm
403 Nacogdoches Street, Suite 1
PO Box 2016
Center, Texas  75935
april@mettauerlaw.com

*/s/ Jeff Bates*_____
Jeff Bates

# APPENDIX

Tex. Atty. Gen. Op. DM-490 (Tex.A.G.), 1998 WL 794850

Office of the Attorney General

State of Texas
Opinion No. DM-490
November 12, 1998

*1 Re: Whether a school district is entitled to assess ad valorem taxes against royalty interests in a pooled gas unit based upon the location of the well or based upon the location of the real property to which the royalty interests appertain (RQ-1140)

The Honorable John Mann
District Attorney
31st & 223rd Judicial Districts of Texas
P.O. Box 24
Shamrock, Texas 79079-0024

Dear Mr. Mann:

The former Wheeler County Attorney [1] submitted an opinion request to this office asking about the distribution of ad valorem taxes on royalty interests in gas between two school districts when the well is located in school district A but the royalty interests sharing royalty income from the well appertain to land located in both school districts A and B. He described the following situation: A 640 acre tract of land in Wheeler County is the subject of a pooling agreement "whereby all royalty owners in the . . . tract receive royalty income from" the one producing gas well on the tract. Half of the tract is located in school district A and the other half is located in school district B. The tract's one producing gas well is located in school district A. Although the royalty owners of the half of the tract located in school district B receive royalties, school district A "is receiving all ad valorem taxes assessed against the royalty estates in the entire 640 acre tract since the . . . well bore is within this school district."

Wheeler County asks, in essence, whether a school district is entitled to assess ad valorem taxes against royalty interests based upon the location of the well or based upon the location of real property to which the royalty interests appertain. We conclude that a school district is entitled to assess ad valorem taxes against a royalty interest based upon the location of the real property to which the royalty interest appertains. We have not been able to locate any court decision or attorney general opinion addressing the particular situation at issue. Case law and statutes, however, provide the basis for our conclusion.

It is well established in this state that a royalty interest in oil, gas or other minerals is taxable as real property. [2] The Tax Code governs the taxable situs of real property as follows: "Real property is taxable by a taxing unit if located in the unit on January 1." [3] Courts have held that because a royalty interest is taxable as an interest in land, it is taxable as real estate in the county where the land to which it appertains is located, rather than in the county where the owner of the interest resides. [4] In other words, the taxable situs of a royalty interest is the location of the real property to which the royalty interest appertains. We believe it follows from these principles that a school district may tax royalty interests that appertain to real property located in the school district and may not tax royalty interests that pertain to real property located outside the school district.

*2 Based upon the foregoing, we believe that in the situation presented both school districts are entitled to tax the royalty income generated by the well located in school district A. School district A may tax the royalty income on royalty interests that appertain to real property located in school district A, and school district B may tax the royalty income on royalty interests that appertain to real property located in school district B. As we explain below, however, the terms of the pooling agreement will determine whether the school districts send tax bills to all or only some of the royalty interest owners. [5]



EXHIBIT

In the absence of a stipulation to the contrary, "the legal effect of pooling . . . is to constitute all of the participants joint owners or joint tenants of all royalty interests in the pooled . . . block, the ownership being in the proportion that the acreage in each tract bears to the total acreage in the block."[6] Under the terms of the pooling agreement, the royalty interests in the 640 acre tract may be jointly owned by all of the royalty interest owners. In that case, the two school districts would each tax half of the income on all the royalty interests, and each school district would send a tax bill to each royalty interest owner. If, however, the royalty interest owners are not joint tenants, then each school district would tax all of the income on only those royalty interests located in the school district and would send a tax bill only to those royalty interest owners. Because the determination whether the royalty interest owners' interests are jointly owned depends upon the terms of the pooling agreement,[7] its resolution is beyond the scope of an attorney general opinion.[8]

In sum, a school district is entitled to assess ad valorem taxes against royalty interests in a pooled gas unit based upon the location of the real property to which the royalty interests appertain as opposed to the location of the well. Whether the school districts in the situation you present will send tax bills to all or some of the royalty interest owners will depend upon the terms of the pooling agreement.[9]

Summary

A school district is entitled to assess ad valorem taxes against royalty interests in a pooled gas unit based upon the location of the real property to which the royalty interests appertain as opposed to the location of the well.

Yours very truly,

Dan Morales
Attorney General of Texas
Jorge Vega
First Assistant Attorney General
Sarah J. Shirley
Chair
Opinion Committee
Prepared by Mary R. Crouter
Assistant Attorney General

Footnotes

1 We have received a letter from your office stating that the "District Attorney's Office for the 31st and 223rd Judicial Districts of Texas is now acting in the capacity of County Attorney for Wheeler County" and that the "office of the Wheeler County Attorney continues to be interested in obtaining the opinion previously requested in reference to Request # 995." We assume you intend to refer to RQ-1140 rather than RQ-995, as the latter request is no longer pending in this office. We received an opinion request, which we assigned RQ-995, from the former Wheeler County Attorney in July 1997, and soon thereafter asked him to brief the legal questions presented in the request. We kept RQ-995 open awaiting a legal brief until this winter when we closed it by a letter dated February 17, 1998. We received a letter brief from the former Wheeler County Attorney in May 1998, which we treated as a new request, RQ-1140.

2 See Sheffield v. Hogg, 77 S.W.2d 1021, 1030 (Tex. 1934); Tax Code § 1.04(2) (defining the term "real property" to include "an estate or interest" in land or a mineral in place).

3 Tax Code § 21.01; see also id. § 25.17 ("If real property is located partially outside and partially inside a taxing unit's boundaries, the portion inside the unit's boundaries shall be listed separately from the remaining portion.").

4 Jett v. Kahn, 273 S.W.2d 431, 433 (Tex. Civ. App.--Beaumont 1954, writ ref'd n.r.e.) ("royalties are 'rights and privileges belonging or . . . appertaining' to the land leased . . . and are therefore assessable as real property by the defendant county and school district . . . ."); Wilcox v. Hull-Daisetta Indep. Sch. Dist., 95 S.W.2d 490, 493 (Tex. Civ. App.--Beaumont 1936, writ ref'd) (concluding that "said 3 per cent royalty or interest is an interest in the 300 acres of land and so taxable as real estate in the county where the land is located"

and rejecting argument that royalty interest payable only in money was interest in personal property taxable only in interest owner's county of residence).

5    We assume for purposes of this opinion that the royalty interest owners have not filed a request for joint taxation. See Tax Code § 25.12.

6    56 TEX. JUR. 3D Oil and Gas § 496 at 283 (1987). See Brown v. Smith, 174 S.W.2d 43, 46 (Tex. 1943) ("An oil and gas lease jointly executed by the owners of two or more tracts of land owned in severalty, with provision for pooling or sharing, on the basis of acreage, the royalties from oil or gas produced anywhere on the leased land, has the effect of vesting all of the lessors, at least during the life of the lease, 'with joint ownership of the royalty earned from all the land in such block.' The lease so executed is a conveyance by each lessor to each of the other lessors of an undivided interest in the royalties. The joint ownership of the royalty interest in all of the land included in such lease is created by the action of the several land owners in joining in the execution of the lease."); see also Montgomery v. Rittersbacher, 424 S.W.2d 210, 213 (Tex. 1968); Veal v. Thomason, 159 S.W.2d 472, 476 (Tex. 1942); Kelln v. Brownlee, 517 S.W.2d 568, 571 (Tex. Civ. App.--Amarillo 1974, writ ref'd n.r.e.).

7    We have no information about the pooled gas unit at issue. The allocation of interests in the production of some pooled units is governed by statute and may be modified by the Texas Railroad Commission. See, e.g., Nat. Res. Code § 102.051. In other cases, the allocation of interests in the production of a pooled unit is controlled by contract. Here, the owners of mineral interests in the 640 acre tract may have entered into a private pooling agreement.

8    This office cannot make findings of fact and does not construe contracts. See Attorney General Opinions DM-383 (1996) at 2 (interpretation of contract not appropriate function for opinion process), DM-192 (1992) at 10 ("This office, in the exercise of its authority to issue legal opinions, does not construe contracts."), JM-697 (1987) at 6 ("review of contracts is not an appropriate function for the opinion process").

9    The first opinion request, RQ-995, asked whether school district B is entitled to recover from school district A any improperly collected taxes. In his May 1998 letter, however, the former Wheeler County Attorney neither raised nor briefed this issue and we do not address it here. See note 1 supra.

Tex. Atty. Gen. Op. DM-490 (Tex.A.G.), 1998 WL 794850

**End of Document**            © 2015 Thomson Reuters. No claim to original U.S. Government Works.