**C.W. BYROM et al., Petitioners,**

v.

**Paul PENDLEY, Respondent.**

No. C–5154.

Supreme Court of Texas.

Oct. 8, 1986.

Stephen W. Holt, Smith, Carter, Rose, Finley & Hofmann, San Angelo, for petitioners.

Virgil T. Seaberry, Jr., Turner, Seaberry & Warford, Eastland, for respondent.

## ON MOTION FOR REHEARING

HILL, Chief Justice.

We grant the respondent's motion for rehearing, withdraw the opinion and judgment of June 18, 1986, and substitute this opinion.

The question presented for review is whether C.W. Byrom, a cotenant who drilled a producing well while denying, in a pending lawsuit, the validity of cotenant Paul Pendley's interest, is a bad-faith trespasser as a matter of law. In a bench trial, the district court answered this question negatively, and awarded Byrom recovery against Pendley for his necessary and reasonable costs of production.[1]

The court of appeals reversed that judgment, holding that Byrom was a trespasser as to Pendley's interest as a matter of law, because he claimed to own Pendley's interest. The court of appeals further held that Byrom trespassed in bad faith because he drilled the well in question while asserting, in pending litigation, that Pendley's leasehold interest was invalid. 703 S.W.2d 405. We hold that Byrom was not a trespasser as to Pendley's leasehold interest, and accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for consideration of the factual sufficiency of the evidence supporting the amount of the trial court's judgment.

C.W. Byrom owned an undisputed $^{11}\!/_{24}$ths leasehold working interest in a tract of land in Eastland County, Texas. Another $^1\!/_{24}$th working interest was not leased and was also not in dispute. In November 1976, Paul Pendley acquired an oil and gas lease covering the remaining $^{12}\!/_{24}$ths interest. Approximately six months later, Byrom obtained a lease from Pendley's lessors covering this same remaining $^{12}\!/_{24}$ths mineral interest.

Because of an insufficient property description in the Pendley lease, Pendley filed suit in June 1977 to reform the lease to correctly describe the covered property. Byrom intervened in that suit, seeking to have the Pendley lease declared void and removed as a cloud from Byrom's title. While that suit was pending, Byrom drilled the Byrom-Everett No. 1 Well on the property in dispute. The well was completed as an oil well and began operating, with the proceeds attributable to Pendley's alleged $^{12}\!/_{24}$ths leasehold interest placed in escrow. Pendley ultimately prevailed in his June 1977 property title suit, thereby validating his $^{12}\!/_{24}$ths leasehold interest and invalidating Byrom's lease covering that interest.

Mr. Byrom then filed this lawsuit against Paul Pendley, seeking a declaration that he was entitled to recover from the funds held in escrow one-half of the costs of drilling and operating the Byrom-Everett No. 1 Well.[2] After a nonjury trial, the district court rendered judgment for Byrom, holding that "by virtue of their $^{11}\!/_{24}$ths working interest, [Byrom] had the right to drill the Byrom-Everett No. 1 Well and to produce oil and gas from the property." It further concluded that Byrom was not a trespasser against Pendley. Additionally, the trial court's findings of fact included a finding that "[Byrom] acted in good faith in drilling and operating the Byrom-Everett No. 1 well." The court of appeals reversed and rendered judgment for Pendley, holding that Byrom was a bad-faith trespasser as a matter of law. Its decision hinged on the undisputed fact that Byrom drilled the well in question while asserting in then pending

---

1. The trial court also rendered judgment for the nonoperating "investor" working interest owners, also named as plaintiffs. They are: Leon C. Thompson, Jack Sherman, Pat Agnew, and New Mexico Bank & Trust Company, Trustee for W.K. Byrom and Frankie M. Byrom. For convenience, all plaintiffs will be referred to as "Byrom."

2. The Permian Corporation and EPX Company were also named as defendants because they were holding in escrow the proceeds attributable to Pendley's one-half leasehold interest. Permian and EPX did not participate in the trial or in this appeal.

litigation that Pendley's one-half leasehold interest was invalid.

Byrom contends that although he lost his claim to the $^{12}/_{24}$ths mineral interest described in the Pendley lease, he nevertheless had the right to drill and produce a well on the strength of his undisputed $^{11}/_{24}$ths leasehold interest. We agree.

■ It has long been the rule in Texas that a cotenant has the right to extract minerals from common property without first obtaining the consent of his cotenants; however, he must account to them on the basis of the value of any minerals taken, less the necessary and reasonable costs of production and marketing. *Cox v. Davison*, 397 S.W.2d 200, 201 (Tex.1965); *Burnham v. Hardy Oil Co.*, 147 S.W. 330, 334–35 (Tex.Civ.App.—San Antonio), *aff'd on other grounds*, 108 Tex. 555, 195 S.W. 1139 (1917). The rule announced in *Burnham* and reaffirmed in *Cox* is founded on the distinctive legal relationship existing between cotenants; that is, each cotenant has a right to enter upon the common estate and a corollary right to possession. *Burnham v. Hardy Oil Co.*, 147 S.W. at 335. In establishing this rule, the *Burnham* court was guided by strong policy considerations:

> [T]he peculiar circumstances of a cotenancy in land upon which oil is discovered warrant one cotenant to proceed and utilize the oil, without the necessity of the other cotenants concurring. Oil is a fugitive substance and may be drained from the land by well on adjoining property. It must be promptly taken from the land for it to be secured to the owners.

*Id.* With this stated policy in mind, we can perceive no reason to treat a cotenant who drills without his cotenant's consent, such as was the case in *Burnham* and *Cox*, differently from a cotenant like Byrom who drills while asserting that his cotenant's lease was defectively described. In either case, the operating cotenant is seeking to protect his undisputed interest in the minerals.

■ It is here asserted, however, that Byrom became a trespasser as to Pend-ley's $^{12}/_{24}$ths leasehold interest solely by denying the validity of the Pendley lease. Pendley relies upon *Humble Oil & Refining Co. v. Kishi*, 276 S.W. 190 (Tex. Comm'n App.1925, judgmt adopted), *rehearing granted*, 291 S.W. 538 (Tex. Comm'n App.1927, holding approved) in support of this contention. We disagree with Pendley's attempt to extend *Kishi* to cases involving entry by a cotenant while denying the validity of his cotenant's interest. Rather, we construe the *Kishi* decision as holding that a lessee of mineral interests who enters the land after termination of the lease and termination of the right to enter is liable to his nonconsenting lessor for injury resulting from such unlawful entry. *See Jarrett v. Ross*, 139 Tex. 560, 164 S.W.2d 550 (1942); *Shell Oil v. Howth*, 138 Tex. 357, 368, 159 S.W.2d 483, 491 (1942). Because the present case does not involve a wrongful claim by a lessee against his lessor after termination of the right to enter, the doctrine involved in *Kishi* is not applicable.

■ We hold that Byrom had the legal right, as a cotenant of Pendley, to proceed to drill and produce oil and gas from the land, subject only to his duty to account to Pendley for Pendley's proportionate part of the value of the oil and gas produced, less Pendley's proportionate part of the drilling and operating expenses. *Cox v. Davison*, 397 S.W.2d at 201; *Burnham v. Hardy Oil Co.*, 147 S.W. at 335.

■ While Pendley did not bring cross-points before this court, we must dispose of those points of error urged by him in the court of appeals but not considered by that court. *McKelvy v. Barber*, 381 S.W.2d 59 (Tex.1964). This court has no jurisdiction over Pendley's point of error challenging the sufficiency of the evidence supporting the amount of the trial court's judgment. Pendley's remaining point of error presents only a question of law, however, which this court has jurisdiction to consider and the resolution of which will avoid the possible necessity of a second

application for writ of error. *See McKelvy,* 381 S.W.2d at 65.

Pendley contends, as he did at trial, that the judgment in the prior title dispute between the parties bars Byrom's present claim under the doctrine of res judicata and collateral estoppel. Pendley argues that res judicata applies because Byrom could have sought recovery for his drilling and production costs in the earlier suit. He also maintains that the issue of Byrom's good faith was litigated in the earlier suit and is thus barred by collateral estoppel.

We hold that neither res judicata nor collateral estoppel bars Byrom's present suit. Res judicata does not apply unless there is identity of parties, subject matter, and issues. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex. 1984). Byrom's claim for production costs raises issues wholly unrelated to those tried in the title dispute and in fact did not actually accrue until Pendley's lease was reformed and validated by the trial court. The law does not require a plaintiff to bring all causes of action against a defendant merely because there is some connection between them. *Owsley v. Mixon,* 382 S.W.2d 354, 356 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.).

Pendley also contends that Byrom is collaterally estopped by the prior judgment from asserting in this case that he acted in good faith in drilling and operating the well. We disagree. The prior trial court's determination that Byrom was not a bona fide purchaser of the disputed leasehold because he was aware of Pendley's competing claim is unrelated to any issue raised by Byrom's present suit for costs. We therefore reject Pendley's argument that the instant suit is barred either by res judicata or collateral estoppel.

In view of our holding, we reverse the judgment of the court of appeals that Byrom was a trespasser as to Pendley's interest as a matter of law; hold that Byrom is neither barred nor estopped from asserting this cause of action; and, remand to the appeals court Pendley's point of error challenging the sufficiency of the evidence to support the amount of the trial court's judgment.