

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00644-CV

Brett **RADCLIFFE**, Robert Radcliffe, and Mamba Minerals, LLC,
Appellants

v.

**TIDAL PETROLEUM, INC.**,
Appellee

From the 218th Judicial District Court, La Salle County, Texas
Trial Court No. 13-07-00176-CVL
Honorable Donna S. Rayes, Judge Presiding

### OPINION ON SECOND MOTION FOR REHEARING

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  February 8, 2017

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

On August 24, 2016, in response to appellee Tidal Petroleum, Inc.'s motion for rehearing, we withdrew our May 11, 2016 opinion and judgment and substituted a clarified opinion and judgment.  Thereafter, Tidal filed a second motion for rehearing, Appellants filed a response, and Tidal filed a reply.  Having considered the second motion, response, and reply, we grant the second motion for rehearing, withdraw our August 24, 2016 opinion and judgment, and substitute this opinion and judgment in their stead.

Appellants Brett Radcliffe, Robert Radcliffe, and Mamba Minerals, LLC (collectively the Radcliffes) sued appellee Tidal Petroleum, Inc. The Radcliffes alleged Tidal was removing minerals from their mineral estate without the Radcliffes' permission. Tidal moved for traditional and no-evidence summary judgment on the grounds that, inter alia, the Radcliffes submitted no evidence of any ownership interest in the subject tract, and the trial court granted Tidal's motion.

We conclude the Radcliffes provided more than a scintilla of evidence of ownership and the trial court could not have properly granted Tidal's no-evidence motion. Further, Tidal conclusively proved each essential element of its cotenancy affirmative defense against each of the Radcliffes' tort claims. Thus, we affirm the trial court's order with respect to each of the Radcliffes' tort claims, but we reverse the trial court's order with respect to the Radcliffes' trespass-to-try-title claim. We remand the cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Emma Simmons Radcliffe, now deceased, owned 120 acres of land in La Salle County, Texas. In 1945, Emma conveyed the entire surface estate, and at least half of the mineral estate, to Tidal Petroleum, Inc.'s predecessor-in-interest. The parties dispute what interest Emma reserved. It is undisputed that the Bashams[1] eventually became owners of the mineral interest that Emma conveyed in the 1945 Deed, and that in 2010, the Bashams leased the tract to Tidal (the Basham-Tidal lease). Tidal drilled wells that began producing in paying quantities, and Tidal has not made any payments to the Radcliffes for any production from the tract.

Emma Simmons Radcliffe was married to Robert Taylor (R.T.) Radcliffe. They had only one child, Robert Daniel (R.D.) Radcliffe. R.D. had three children: Robert, Brett, and Amber. In

---

[1] The Bashams are Kathryn Basham Self, Hal Jayson Basham, and Timothy Joseph Basham.

October 2011, the Radcliffes advised Tidal that Emma's mineral interest had passed to them, and Tidal was producing minerals from their mineral estate without their permission. When Tidal rejected the Radcliffes' claim of ownership, the Radcliffes sued Tidal for trespass to try title, bad faith trespass, and other intentional torts. Tidal contended there is a gap in the chain of title and the Radcliffes offered no summary judgment evidence that the Radcliffes own *any* mineral interest in the tract. Both sides moved for summary judgment, but not on the same claims. The trial court held a hearing but did not contemporaneously rule on the motions.

In the months between the hearing and when the trial court signed the summary judgment order, the Radcliffes moved for reconsideration and for a new trial, and submitted a number of documents including a file-stamped copy of Emma's will.

In its written order, the trial court sustained Tidal's objections to any late-filed summary judgment evidence, including Emma's will. The trial court granted Tidal's summary judgment motion but the trial court did not specify the grounds for its decision; it did not state whether it granted Tidal's no-evidence motion or its traditional motion.

On appeal, the Radcliffes raise two issues: (1) even without Emma's will, Tidal was not entitled to no-evidence summary judgment because the Radcliffes produced some evidence of ownership and Tidal was not entitled to traditional summary judgment because the evidence, at a minimum, raised a fact question as to ownership of the disputed interest and the Radcliffes' other claims; and (2) the trial court abused its discretion in refusing to consider Emma's will as part of the summary judgment evidence. We begin by reviewing Tidal's no-evidence motion.

### TIDAL'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

Tidal moved for summary judgment against all of the Radcliffes' claims on no-evidence and traditional grounds. Because the trial court's order does not state the basis on which it granted

Tidal's motion,[2] we review the evidence under both standards, beginning with the no-evidence standard. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)) (evaluate no-evidence motion first).

## A.      Standard of Review

We review a no-evidence summary judgment using a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "Whether reviewing a traditional or a no-evidence summary judgment, we accept the non-movant's evidence as true and 'indulge every reasonable inference and resolve any doubts in the non-movant's favor.'" *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.) (quoting *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004)).

If the nonmovant's summary judgment evidence contains "more than a scintilla of probative evidence to raise a genuine issue of material fact," the trial court may not properly grant the no-evidence motion. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *see* Tex. R. Civ. P. 166a(i). "More than a scintilla of evidence exists when the evidence 'rises to a level that would

---

[2] The Radcliffes argue the trial court's oral statements that it had denied the no-evidence motion means the trial court did not grant Tidal's no-evidence motion. But a "written judgment controls over the court's oral pronouncements." *Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *accord Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 657 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The trial court's written order does not state the basis on which it granted the motion, and we must consider both the traditional and no-evidence motions. *See Heritage Gulf Coast Props.*, 416 S.W.3d at 657–58.

enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

**B.      Trespass-to-Try-Title Claim**

To prevail in a trespass-to-try-title suit, a plaintiff must prove a superior right to title and may do so by proving "a regular chain of conveyances from the sovereign." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004); *Gaut v. Daniel*, 293 S.W.3d 764, 766 (Tex. App.—San Antonio 2009, pet. denied).  Here, the parties agree there is a valid chain of title from the sovereign to Emma.  They disagree on whether there is a gap in the chain of conveyances from Emma to the Radcliffes.

*1.      Tidal's Motion for Summary Judgment*

In its third amended motion for summary judgment, Tidal contended "Plaintiffs failed to offer *any* evidence that they actually own *any* mineral or royalty interest in the subject tract."  Tidal argued the deed records do not show what happened to Emma's reserved mineral interest on her death, and it did not pass to her husband R.T.  According to Tidal, after R.T. died in California, Emma's reserved mineral interest was not listed in the Inventory and Appraisement of R.T.'s estate or the Notice of Filing Report of Inheritance Tax Referee, and no taxes were assessed on any such interest.  Tidal contended this is evidence that Emma's interest did not pass from R.T. to his son R.D., and the Radcliffes cannot be successors-in-interest to Emma's reserved interest.

*2.      Radcliffes' Response*

In their response to Tidal's motion, the Radcliffes argued there is some evidence of an unbroken chain of title from Emma to them based on the following:

- Emma's interest passed to R.T. and R.D. by intestate succession,
- R.T.'s portion of Emma's interest passed to R.D. by will or intestacy,

- Emma's entire mineral interest passed from R.D. to his three heirs by intestacy, and
- Amber's portion of Emma's interest passed to Mamba Minerals by deed.

As summary judgment evidence, the Radcliffes offered, inter alia, two affidavits of heirship showing Robert, Brett, and Amber as R.D.'s only heirs; death certificates for Emma, R.T., and R.D.; and birth certificates for Robert and Brett.

### 3. Scope of Evidence Reviewed

The trial court sustained Tidal's objections to any late-filed summary judgment evidence, including Emma's will; thus, for purposes of analyzing the no-evidence motion, we do not consider it. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). But the trial court's order expressly states the court considered the responses to the motions for summary judgment and the affidavits of heirship. Thus, we consider the timely-filed summary judgment evidence, the affidavits of heirship, and the responses. *See K-Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 96 (Tex. App.—San Antonio 2002, no pet.) (considering late-filed responses when the trial court's order stated it considered them). In the Radcliffes' response, they included, inter alia, the following documents:

- Emma's death certificate,
- R.T.'s (Robert Taylor Radcliffe's) death certificate,
- R.D.'s (Robert Daniel Radcliffe's) death certificate,
- Robert's and Brett's birth certificates,
- Robert and Brett's mother's Affidavit of Heirship,
- Amber's mother's Affidavit of Heirship, and
- Amber's deed to Mamba Minerals.

We address each document, and the reasonable inferences we may draw therefrom, *see Strandberg*, 293 S.W.3d at 738, as we consider the evidence pertaining to each challenged link in the chain of title.

*4.    Some Evidence of Each Link in Chain*

Under the no-evidence standard of review, we take the Radcliffes' evidence as true, disregard all contrary evidence and inferences, *King Ranch*, 118 S.W.3d at 751, and "'indulge every reasonable inference and resolve any doubts in the [Radcliffes'] favor,'" *Strandberg*, 293 S.W.3d at 738 (quoting *Joe*, 145 S.W.3d at 157).  For our discussion, we assume there are three parts to this chain of title: (1) the links down from the sovereign to Emma, (2) the links up from the Radcliffes to R.T., and (3) the alleged gap—the cross-link from Emma to R.T.

a.    Sovereign Down to Emma

Tidal does not dispute the chain of title from the sovereign to Emma.  It did not assert there was no evidence of those links, and the trial court could not have properly granted summary judgment on that basis.  *See* TEX. R. CIV. P. 166a(i) ("The motion must state the elements as to which there is no evidence."); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (analyzing the grounds for a no-evidence motion and observing "a trial court cannot grant a summary judgment motion on grounds not presented in the motion").

b.    Radcliffes Up to R.D.

To work their way up the chain to Emma, the Radcliffes filed various documents including the following: (1) a July 1, 2011 deed in which Amber conveyed all of her interest in Emma's mineral interest to Mamba Minerals; (2) an affidavit of heirship from Amber's mother, Misti Lammert, in which she avers that Amber was R.D.'s child; (3) an affidavit of heirship from Robert and Brett's mother, Barbara Radcliffe, in which she avers that Robert and Brett were born to her and R.D. Radcliffe; and (4) Robert's and Brett's birth certificates showing they were born to R.D. Radcliffe.  Both affidavits of heirship also aver R.D. died unmarried and intestate, and Robert, Brett, and Amber were R.D.'s only heirs.

Taking the Radcliffes' evidence as true, and making all reasonable inferences and resolving doubts in their favor, *see Strandberg*, 293 S.W.3d at 738, we conclude there is more than a scintilla of summary judgment evidence of Robert, Brett, and Amber's right to take under intestate succession whatever interest R.D. owned at his death. *See* TEX. EST. CODE ANN. § 201.001 (West 2014) ("Estate of an Intestate Not Leaving Spouse," formerly Texas Probate Code section 38(a)); *King Ranch*, 118 S.W.3d at 751 (scintilla).

       c.       <u>R.D. Up to R.T.</u>

To show the link from R.D. to R.T., the Radcliffes referred to Tidal's summary judgment evidence Exhibit J-1, R.T.'s will. In R.T.'s will, which the Radcliffes assert was probated in California, he identifies his wife as Emma Simmons Radcliffe, and his son as Robert Daniel Radcliffe (R.D.). The "FIFTH" provision in R.T.'s will states that if Emma predeceases R.T., all of R.T.'s property shall pass to his son R.D. In the "SIXTH" provision, R.T. "intentionally and with full knowledge omitted to provide for [his] heirs who may be living at the time of [his] death." In their summary judgment evidence, the Radcliffes offered Emma's death certificate; it shows she died on October 11, 1968, and her surviving spouse is Robert T. Radcliffe (R.T.). The Radcliffes also offered R.T.'s death certificate; it shows Robert Taylor Radcliffe (R.T.), a widower, died on November 20, 1972.

Taking the evidence favoring the Radcliffes as true, and making all reasonable inferences and resolving doubts in their favor, we conclude there is more than a scintilla of summary judgment evidence of R.D.'s right to take under R.T.'s will whatever interest R.T. owned at his death. *See King Ranch*, 118 S.W.3d at 751 (scintilla); *Strandberg*, 293 S.W.3d at 738 (inferences, doubts).

       d.      <u>Alleged Gap: Emma to R.T. (and R.D.)</u>

The remaining question in the chain of title is what summary judgment evidence, if any, shows that upon Emma's death, the disputed mineral interest passed to her husband R.T.

Tidal insists there is no evidence that the interest transferred from Emma to R.T. It notes that the Inventory and Appraisement of R.T.'s estate filed in California does not list the Texas mineral interest, the interest is not reported in the Notice of Filing Report of Inheritance Tax Referee, and no taxes were assessed on any such interest in the Order Fixing Inheritance Tax. Tidal insists there is a gap in the chain of title, and the trial court properly granted its no-evidence motion against the Radcliffes' trespass-to-try-title claim.

In their response to Tidal's motion, the Radcliffes proffered evidence and argued that section 38(b) of the Texas Probate Code applied. *See* TEX. EST. CODE ANN. § 201.002 (West 2014) (formerly Probate Code section 38(b)) ("Separate Estate of an Intestate"). Emma predeceased R.T., and the Radcliffes argued that if there was no evidence of any will from Emma, the presumption of intestacy applied, and by operation of Texas law, any mineral interest Emma had in the property passed by intestate succession to her husband R.T. and her son R.D.

Taking the evidence favoring the Radcliffes as true, *see Strandberg*, 293 S.W.3d at 738, it shows the following. Emma's death certificate shows R.T. as Emma's surviving spouse. R.T.'s will shows R.D. was the sole child of the marriage of R.T. and Emma. R.T.'s death certificate shows he was a widower when he died and that he had no surviving spouse.

Because Emma died more than seven years before the hearing and there was no summary judgment evidence of her will, the presumption of intestacy applied. *See* TEX. PROP. CODE ANN. § 71.003 (West 2014). It is undisputed that Emma's mineral interest was her separate property. On her death, under intestate succession, R.T. received a life estate in one-third of Emma's mineral

interest and R.D. received the other two-thirds and the remainder.[3]  *See* TEX. EST. CODE ANN. § 201.002; *Haile v. Holtzclaw*, 414 S.W.2d 916, 923 (Tex. 1967).

We conclude there is more than a scintilla of evidence to show that when R.T. died, whether by operation of law for the remainder, or under R.T.'s will for the devises, all of R.T.'s property passed to R.D.

Having taken the evidence favoring the Radcliffes as true, and making reasonable inferences and resolving doubts in their favor, we conclude there is more than a scintilla of summary judgment evidence of ownership—of an unbroken chain of title in the mineral interest from Emma to the Radcliffes.  *See Smith*, 288 S.W.3d at 424; *King Ranch*, 118 S.W.3d at 751. We necessarily conclude the trial court could not have properly granted Tidal's no-evidence motion for summary judgment against the Radcliffes' trespass-to-try-title claim.

## C.    Bad Faith Trespass Claim

In its no-evidence motion for summary judgment, Tidal argued the Radcliffes "have no evidence to support their cause of action for bad faith trespass as a matter of law."  It adds that "Tidal had an absolute right to lease from [other] cotenants in the mineral estate and therefore did not commit a trespass."  In other parts of its motion, Tidal asserts there is no evidence (1) that the Radcliffes have any ownership to the interest reserved in the 1945 deed or (2) of any bad faith trespass because one cannot—as a matter of law—have an unauthorized entry onto a nonpossessory interest.

We construe Tidal's assertions as no-evidence challenges to the bad faith trespass elements of ownership and lack of consent.  *See Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457

---

[3] Under Texas law, a mineral estate and a royalty interest are real property rights.  *Lesley v. Veterans Land Bd. of State*, 352 S.W.3d 479, 480–81, 487 (Tex. 2011) (mineral estate); *Lyle v. Jane Guinn Revocable Trust*, 365 S.W.3d 341, 351 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (royalty interest).

S.W.3d 414, 425 (Tex. 2015) ("[L]ack of consent or authorization is an element of a trespass cause of action that a plaintiff must prove."); *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 557 (Tex. App.—San Antonio 2011, no pet.) (bad faith trespass elements). Because we have already concluded the Radcliffes met their burden to produce more than a scintilla of evidence of ownership, we next consider Tidal's other no-evidence motion grounds against bad faith trespass.

### 1.    *Tidal's Other Bad Faith Trespass Grounds*

Tidal argues that even if there is some evidence of the Radcliffes' ownership in the interest, there is no evidence of trespass because the Radcliffes' interest is at most a nonparticipating royalty interest (NPRI), and one cannot commit trespass against a nonpossessory interest. Tidal also argues there is no evidence of trespass because the law of cotenants gives it an "absolute right" to produce minerals from its leasehold without the Radcliffes' permission. Tidal contends that when the Bashams leased their undivided interest to Tidal, Tidal obtained the Bashams' consent and authorization to enter the leasehold. Citing *Byrom*, *Burnham*, and other cases, Tidal insists that, under the law of cotenants, Tidal could not be—as a matter of law—a bad faith trespasser against the Radcliffes' undivided one-half interest and thus there is no evidence of Tidal's alleged bad faith trespass. *See, e.g.*, *Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986); *Burnham v. Hardy Oil Co.*, 147 S.W. 330, 335 (Tex. Civ. App.—San Antonio 1912), *aff'd*, 195 S.W. 1139 (Tex. 1917).

### 2.    *Radcliffes' Responses*

The Radcliffes contend there is at least some evidence that Tidal is a bad faith trespasser because the law of cotenants does not apply to the Basham-Tidal lease. They note the 1945 Deed required the Radcliffes' joinder in the Basham-Tidal lease, and it is undisputed the Radcliffes were not joined. The Radcliffes argue that, under *Elick*, the failure to join them "renders the [Basham-Tidal] lease fatally defective." *See Elick v. Champlin Petrol. Co.*, 697 S.W.2d 1, 5 (Tex. App.—

Houston [14th Dist.] 1985, writ ref'd n.r.e.) (voiding a lease for failure to obtain a required joinder). In the Radcliffes' view, because the Basham-Tidal lease was void in its entirety for the failure to join the Radcliffes, Tidal had no right to produce from the leasehold at all—not from either the Radcliffes' or the Bashams' undivided interests.

Before we address trespass, we must consider two analytical prerequisites: cotenancy and *Elick*. *See id.* We begin with the law regarding cotenants and its applicability here.

### 3. *Law of Cotenants*

"Owners of undivided portions of oil and gas rights in and under real estate are tenants in common, and an oil and gas lessee of a co-tenant becomes a co-tenant with the co-tenants of his lessor." *Willson v. Superior Oil Co.*, 274 S.W.2d 947, 950 (Tex. Civ. App.—Texarkana 1954, writ ref'd n.r.e.); *see Aycock v. Vantage Fort Worth Energy, LLC*, No. 11-13-00338-CV, 2015 WL 1322003, at *1 (Tex. App.—Eastland Mar. 20, 2015, pet. denied). "It has long been the rule in Texas that a cotenant has the right to extract minerals from common property without first obtaining the consent of his cotenants . . . ." *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 426 (Tex. 2008) (quoting *Byrom*, 717 S.W.2d at 605); *see BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011). This court recently reiterated that rule, *see Prize Energy*, 345 S.W.3d at 557, and the Fifth Circuit has also recognized it, *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 983 (5th Cir. 1996) (citing *Byrom*, 717 S.W.2d at 605).

The rule's underpinnings reach back to this court's *Burnham* decision over a century ago, and *Burnham*'s "strong policy considerations" were quoted in *Byrom*:

> [T]he peculiar circumstances of a cotenancy in land upon which oil is discovered warrant one cotenant to proceed and utilize the oil, without the necessity of the other cotenants concurring. Oil is a fugitive substance and may be drained from the land by well on adjoining property. It must be promptly taken from the land for it to be secured to the owners.

*Byrom*, 717 S.W.2d at 605 (alteration in original) (quoting *Burnham*, 147 S.W. at 335). In keeping with that policy, a cotenant "ha[s] the legal right . . . to proceed to drill and produce oil and gas from the land, subject *only* to his duty to account to [the other cotenants] for [the other cotenants'] proportionate part of the value of the oil and gas produced, less [the other cotenants'] proportionate part of the drilling and operating expenses." *Id.* (emphasis added) (citing *Cox v. Davison*, 397 S.W.2d 200, 201 (Tex. 1965)); *accord Marshall*, 342 S.W.3d at 70; *Prize Energy*, 345 S.W.3d at 557.

Further, one cotenant is not another cotenant's agent. *Myers v. Crenshaw*, 116 S.W.2d 1125, 1129 (Tex. Civ. App.—Texarkana 1938), *aff'd*, 137 S.W.2d 7 (Tex. 1940) ("[E]ach owner in a cotenancy acts for himself and no one is the agent of another nor has any authority to bind him merely because of the relationship."). And "[a]bsent a special relationship, there is no fiduciary obligation owed by one cotenant to the others." *Scott v. Scruggs*, 836 S.W.2d 278, 282 (Tex. App.—Texarkana 1992, writ denied) (citing *Horlock v. Horlock*, 614 S.W.2d 478, 485 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)); *accord Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 218 (Tex. App.—Texarkana 2006, pet. denied); *Hamman v. Ritchie*, 547 S.W.2d 698, 706–07 (Tex. Civ. App.—Fort Worth 1977, writ ref'd n.r.e.) ("An owner of land in cotenancy is not trustee for the others who may be his cotenants and there is no fiduciary obligation owed by any one of them to the others.").

### 4. Tidal and the Radcliffes are Cotenants

Because Tidal was the movant, we take the evidence favorable to the Radcliffes as true. *See Strandberg*, 293 S.W.3d at 738 (quoting *Joe*, 145 S.W.3d at 157). The Radcliffes submitted evidence and averred they are successors-in-interest to Emma's mineral reservation, and they own an undivided one-half mineral interest in the tract. Thus, for purposes of reviewing the summary

judgment motion, we assume the Radcliffes own an undivided one-half mineral interest in the tract. *See id.*

Regarding Tidal's interest in the tract, it is undisputed that Tidal leased the tract from the Bashams, and that the Bashams own some rights in the tract's mineral estate. Therefore, for the purpose of reviewing the summary judgment motion, we conclude that the Bashams and the Radcliffes are "[o]wners of undivided portions of oil and gas rights in and under real estate [and they] are tenants in common." *See Willson*, 274 S.W.2d at 950 (citing *Burnham*, 147 S.W. at 335). Thus, as the Bashams' lessee, Tidal is the Radcliffes' cotenant, and the law of cotenants applies in this case. *See id.* ("[A]n oil and gas lessee of a co-tenant becomes a co-tenant with the co-tenants of his lessor.").

*5.*      Elick *Argument*

The Radcliffes argue that the cases Tidal cites to show cotenancy applies are inapt because none dealt with a contested cotenancy or a reservation with a right to joinder, and we should apply *Elick*. *See Elick*, 697 S.W.2d at 5. But *Elick*'s parties were not cotenants, and *Elick* is readily distinguishable. *See id.*

In *Elick*, the grantor reserved a royalty interest and the right to join in future leases, but the grantee's successor-in-interest failed to obtain the Elicks' joinder in the lease. *Id.* at 2–3. Because the Elicks "successfully reserved the right to join in the execution of all oil, gas and mineral leases covering the . . . tract," and the Elicks did not join or ratify the lease, the *Elick* court declared the lease void. *Id.* at 5. Importantly, *Elick* states "the parties do not hold undivided interests in the mineral estate," and "the law of co-tenants does not apply." *Id.* This crucial difference distinguishes *Elick*.

Here, unlike *Elick*, Tidal and the Radcliffes[4] each hold an undivided interest in oil and gas rights to the tract; they are, by operation of law, cotenants. *See Willson*, 274 S.W.2d at 950. Because the Radcliffes and Tidal are cotenants, *Elick* does not apply: it does not operate to void the lease or create an action against Tidal for trespass. *See Elick*, 697 S.W.2d at 5 ("The law of co-tenants does not apply in the [Elicks' case].").

### 6. *Trespass—Against Nonpossessory Interest*

Tidal admits it has removed and is removing minerals from the tract without the Radcliffes' consent, but Tidal argues there is no evidence of trespass because, even if the Radcliffes own the reserved interest, it is a nonpossessory interest and, as a matter of law, one cannot trespass against a nonpossessory interest. The parties dispute the nature of the reserved interest, and we consider each sides' arguments.

If, as the Radcliffes argue, the reserved interest is a mineral interest, Tidal's admission satisfies the requirement for some evidence of the trespass elements of a physical, intentional, and voluntary entry onto the plaintiff's property that injured plaintiff's right to the property. *See Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied).

On the other hand, if, as Tidal argues, the reserved interest is an NPRI, the Radcliffes may still bring a trespass action even for a nonpossessory interest. *See Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9–10 (Tex. 2008) (recognizing common law trespass includes "an action for injury to a nonpossessory interest"); *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003) (NPRI is a nonpossessory interest). Thus, Tidal's admission is more than a scintilla of evidence of trespass against an NPRI.

---

[4] To the trial court, Tidal argued the Radcliffes do not own any interest in the tract; we do not finally decide this question. Rather, for purposes of reviewing Tidal's no-evidence and traditional motion for summary judgment, we take the Radcliffes' evidence as true and conclude the Radcliffes provided some evidence of their ownership in an undivided interest in oil and gas rights to the tract.

- 15 -

We need not determine the nature of the interest because—regardless of whether it is a mineral interest or a nonparticipating royalty interest—the interest's nature does not decide as a matter of law the question of Tidal's bad faith trespass.[5]

    *7.    Trespass—Lack of Consent*

Lack of consent is an element of trespass, and Tidal's no-evidence motion asserted there was no evidence of lack of consent. *See Envtl. Processing Sys.*, 457 S.W.3d at 425. But Tidal admits it did not obtain the Radcliffes' permission to enter and produce on the Basham leasehold, and Tidal's admission is some evidence of lack of consent. *See id.* Because there was some evidence of the challenged essential element of lack of consent, Tidal was not entitled to summary judgment against the Radcliffes' bad faith trespass claims on the basis of no evidence. *See Smith*, 288 S.W.3d at 424; *Prize Energy*, 345 S.W.3d at 557.

## D.    No Evidence of Other Claims

Besides trespass-to-try-title and bad faith trespass claims, the Radcliffes sued Tidal for several other causes of action.[6] In Tidal's motion, it argues there is no evidence that the Radcliffes own *any* interest in the subject tract. It contends that because the Radcliffes' ownership of Emma's interest is an essential element of each of the Radcliffes' other claims, all of the Radcliffes' other claims must fail. In their response, the Radcliffes complain that Tidal's no-evidence motion is insufficient because it does not state the elements for which there was no evidence; the Radcliffes' complaint challenges the legal sufficiency of the motion. *See Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 283 (Tex. App.—Dallas 2013, pet. denied) (en banc).

---

[5] *See* TEX. R. APP. P. 47.1 (requiring courts of appeals to "address[] every issue raised *and* necessary to final disposition of the appeal" (emphasis added)); *Sloan v. Law Office of Oscar C. Gonzalez, Inc.*, 479 S.W.3d 833, 834 (Tex. 2016).
[6] The Radcliffes' other claims include common law fraud, fraud by nondisclosure, civil conspiracy to defraud Plaintiffs, conversion, misapplication of trust funds, breach of fiduciary duty, breach of operator's duty, theft under the Theft Liability Act, money had and received, and unjust enrichment. The Radcliffes' also asserted the disregarding corporate form—piercing the corporate veil, vice-principal, and mining partnerships theories of liability.

*1.      Specifically Challenged Elements*

Tidal's no-evidence motion expressly identifies and specifically challenges only one essential element for the trespass-to-try-title claim: the Radcliffes' ownership of Emma's interest. *See* TEX. R. CIV. P. 166a(i); *Jose Fuentes Co.*, 418 S.W.3d at 283.  Tidal's motion also specifically identifies bad faith trespass as an essential element of all of the Radcliffes' other claims.  We conclude Tidal's no-evidence motion is legally sufficient to challenge these two elements (i.e., ownership, bad faith trespass) in each claim to which they apply.  *See* TEX. R. CIV. P. 166a(i); *Jose Fuentes Co.*, 418 S.W.3d at 283.  Because we have already concluded there was some evidence of both ownership and bad faith trespass, we further conclude the trial court could not have granted the no-evidence motion on either of these grounds.

*2.      General Challenge*

Tidal also asserts "Plaintiffs have no evidence to support all the elements of their remaining causes of action . . . .  All such causes of action are predicated on Plaintiffs proving that Tidal committed bad faith trespass and other illegal and wrongful actions."  Except for bad faith trespass, this general challenge does not specifically identify any other essential element of any of the Radcliffes' other claims.  *Contra* TEX. R. CIV. P. 166a(i); *N. Tex. Mun. Water Dist. v. Ball*, 466 S.W.3d 314, 320–21 (Tex. App.—Dallas 2015, no pet.) (determining a motion for summary judgment that stated "Plaintiff can produce no evidence which supports the essential elements of breach of contract" did not meet Rule 166a(i)'s requirement to "state the elements as to which there is no evidence" and was legally insufficient to be a no-evidence motion); *Jose Fuentes Co.*, 418 S.W.3d at 283 ("A no-evidence motion that only generally challenges the sufficiency of the non-movant's case and fails to state the specific elements that the movant contends lack supporting evidence is fundamentally defective and cannot support summary judgment as a matter of law.").

*3.        Effectively Unchallenged Elements*

We conclude that, except for the elements of ownership and bad faith trespass, Tidal's motion was legally insufficient to challenge any other elements of the Radcliffes' remaining claims.  *See* TEX. R. CIV. P. 166a(i); *Ball*, 466 S.W.3d at 320–21; *Jose Fuentes Co.*, 418 S.W.3d at 283.  Therefore, the Radcliffes had no burden to produce evidence on the unchallenged elements—those that were not specifically stated in the motion—for any of the other claims, and we need not address the evidence pertaining to the unchallenged elements.  *See* TEX. R. CIV. P. 166a(i); *Jose Fuentes Co.*, 418 S.W.3d at 283.

**E.        No Right to Judgment on No-Evidence Motion**

Because there is some evidence of the Radcliffes' ownership in the mineral interest reserved by Emma, the trial court could not have properly granted Tidal's no-evidence motion for summary judgment against the Radcliffes' trespass-to-try-title claim.  *See Smith*, 288 S.W.3d at 424; *King Ranch*, 118 S.W.3d at 751.  Likewise, because there is some evidence of the Radcliffes' ownership in the mineral interest and of Tidal's trespass against that interest, Tidal was not entitled to judgment on its no-evidence motion against the Radcliffes' trespass or other claims.  *See Smith*, 288 S.W.3d at 424; *King Ranch*, 118 S.W.3d at 751.

But Tidal also moved for judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c) (traditional motion).  Because the trial court did not state the basis on which it granted Tidal's motion, and we must affirm the trial court's judgment "if any of the grounds on which judgment is sought are meritorious," we turn now to Tidal's traditional motion.  *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).

**TIDAL'S TRADITIONAL MOTION FOR SUMMARY JUDGMENT**

Tidal also moved for traditional summary judgment against all of the Radcliffes' claims. Tidal's motion asserts its "summary judgment evidence negates this key element (title) of all the causes of action (that [the Radcliffes] have title to the interest claimed)." Tidal also asserted that— as the Radcliffes' cotenant—it could not be a trespasser as a matter of law, and Tidal is entitled to judgment against the Radcliffes' other claims.

**A.     Standard of Review**

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We examine "the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see City of Keller*, 168 S.W.3d at 827. "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

"A defendant who conclusively negates at least one of the essential elements of the plaintiff's cause of action is entitled to summary judgment." *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)); *Elliott-Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). "Likewise, a defendant who conclusively establishes each element of an affirmative defense is

entitled to summary judgment." *Randall's Food Mkts.*, 891 S.W.2d at 644; *accord Prize Energy*, 345 S.W.3d at 556.

## B.      Trespass-To-Try-Title Claim

Tidal contends it is entitled to summary judgment as a matter of law against the Radcliffes' trespass-to-try-title claim because it conclusively disproved the essential element of ownership. *See Little*, 148 S.W.3d at 381; *Elliott–Williams Co.*, 9 S.W.3d at 803.

As we have previously concluded, the Radcliffes presented more than a scintilla of evidence of ownership in Emma's reserved interest. Because we take the Radcliffes' evidence as true, and make all reasonable inferences and resolve any doubts in their favor, and Tidal failed to conclusively disprove ownership, we necessarily conclude fact issues exist for the Radcliffes' trespass-to-try-title claim. *See Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013) (noting that in a hybrid traditional and no-evidence motion, "the ultimate issue is whether a fact issue exists"); *accord Buck v. Palmer*, 381 S.W.3d 525, 527, n.2 (Tex. 2012). Therefore, Tidal was not entitled to traditional summary judgment against the Radcliffes' trespass-to-try-title claim. *See Neely*, 418 S.W.3d at 59.

## C.      Bad Faith Trespass, Other Claims

In their fourth amended petition, the Radcliffes sued Tidal for bad faith trespass, common law fraud, fraud by nondisclosure, civil conspiracy to defraud, conversion, misapplication of trust funds, breach of fiduciary duty, breach of operator's duty, theft under the Theft Liability Act, money had and received, and unjust enrichment. The Radcliffes' also asserted the disregarding corporate form—piercing the corporate veil, vice-principal, and mining partnerships theories of liability.

Tidal contends it is entitled to judgment as a matter of law on the Radcliffes' bad faith trespass and other claims because it is the Radcliffes' cotenant. As the Radcliffes' cotenant, Tidal

cannot be a trespasser, and bad faith trespass is the alleged wrongful conduct underlying each of the Radcliffes' other claims. Thus, according to Tidal, it is entitled to a take-nothing judgment against the Radcliffes on all their other claims.

In the Radcliffes' responses to Tidal's third amended motion for summary judgment, the Radcliffes produced summary judgment evidence to show their ownership of Emma's mineral interest and Tidal's alleged knowledge of the Radcliffes' ownership. The Radcliffes' evidence is some evidence of their ownership of Emma's mineral interest and of Tidal's failure to pay them the monies allegedly owed, and the Radcliffes rely on this evidence to support each of their other claims.

However, as the Radcliffes' cotenant, Tidal had the right to enter the leasehold and produce oil and gas from it without the Radcliffes' prior consent. *See Wagner & Brown*, 282 S.W.3d at 426 ("It has long been the rule in Texas that a cotenant has the right to extract minerals from common property without first obtaining the consent of his cotenants." (quoting *Byrom*, 717 S.W.2d at 605)); *Prize Energy*, 345 S.W.3d at 557. Thus, Tidal conclusively proved its affirmative defense against each of the Radcliffes' other claims and established its right to judgment on these other claims as a matter of law. *See Randall's Food Markets*, 891 S.W.2d at 644; *Prize Energy*, 345 S.W.3d at 556; *Scott*, 836 S.W.2d at 282 ("Absent a special relationship, there is no fiduciary obligation owed by one cotenant to the others.").

**EXCLUSION OF LATE-FILED EVIDENCE**

In their second issue on appeal, the Radcliffes argue the trial court abused its discretion by sustaining Tidal's objection to admitting Emma's will as late-filed summary judgment evidence. Because we have already concluded Tidal was not entitled to summary judgment against the Radcliffes' trespass-to-try-title claim even without Emma's will, we need not address the Radcliffes' second issue. *See* TEX. R. APP. P. 47.1.

- 21 -

## CONCLUSION

Having reviewed the evidence under the applicable standards of review, we conclude the Radcliffes' summary judgment evidence was more than a scintilla for the challenged element of ownership on their trespass-to-try-title claim against Tidal. Further, Tidal did not conclusively disprove any essential element of the Radcliffes' trespass-to-try-title claim. Thus, Tidal was not entitled to judgment against the Radcliffes' trespass-to-try-title claim on either no-evidence or traditional grounds.

On the other hand, because we take the evidence favorable to the Radcliffes as true, we conclude the summary judgment evidence establishes that the law of cotenancy applies in this case, and for purposes of summary judgment, Tidal proved as a matter of law that it is the Radcliffes' cotenant. Because there is some evidence that the Radcliffes did not consent to Tidal producing oil and gas from the subject tract, Tidal was not entitled to judgment against the Radcliffes' bad faith trespass and other claims on a no-evidence basis. However, because Tidal also moved for judgment as a matter of law, and it conclusively proved each element of its cotenancy affirmative defense, Tidal was entitled to summary judgment against the Radcliffes' bad faith trespass and other tort claims as a matter of law.

Therefore, we affirm the trial court's order against the Radcliffes' bad faith trespass, common law fraud, fraud by nondisclosure, civil conspiracy to defraud, conversion, misapplication of trust funds, breach of fiduciary duty, breach of operator's duty, theft under the Theft Liability Act, money had and received, and unjust enrichment claims. We reverse the trial court's order with respect to the Radcliffes' trespass-to-try-title claim, and we remand this cause to the trial court for further proceedings consistent with this opinion.

Patricia O. Alvarez, Justice