JOHN M. BAILEY, JUSTICE
*260 This appeal concerns the statutory liability under the Texas Natural Resources Code of a producing oil and gas operator/lessee to make royalty payments directly to lessors with whom the producing operator/lessee did not have a lease. The trial court determined that the producing operator/lessee was not responsible for paying royalties directly to the lessors with whom they were not in contractual privity. We affirm.
Background
Norma Jean Hester leased her undivided one-third mineral interest in the subject land to Apache Corporation, reserving a 25% royalty interest. The remaining mineral interest owners (hereinafter the Lessor Plaintiffs) subsequently leased their combined two-thirds mineral interest to Devon Energy Production Company, L.P. The Lessor Plaintiffs also reserved a 25% royalty interest.
Apache and Devon attempted to negotiate terms for a joint operating agreement for the joint development of the mineral estate. However, they were unable to agree to terms. Apache subsequently drilled seven producing oil and gas wells on the subject land. After Apache recovered its costs associated with production and drilling, Apache paid Devon its two-thirds share of the net revenue to which Apache believed Devon was entitled as Apache's cotenant in the mineral estate.
The Lessor Plaintiffs filed suit against both Devon and Apache. The Lessor Plaintiffs alleged that Devon failed to pay the Lessor Plaintiffs "all royalties due" under their leases. The Lessor Plaintiffs also alleged that Apache failed to pay them royalties pursuant to Section 91.402 of the Texas Natural Resources Code. See TEX. NAT. RES. CODE ANN. § 91.402(a) (West Supp. 2017). Devon denied all of the Lessor Plaintiffs' allegations and filed a cross-claim against Apache in which it asserted that Apache owed royalty payments directly to the Lessor Plaintiffs under Section 91.402 of the Natural Resources Code.
All parties moved for partial summary judgment on the issue of which party owed royalty payments to the Lessor Plaintiffs. The trial court granted the Lessor Plaintiffs' motion for summary judgment against Devon and denied their motion for summary judgment against Apache on the issue of royalty payments. The trial court also denied Devon's motion for summary judgment against Apache and granted Apache's motion for summary judgment against Devon on the issue of royalty payments.
Subsequently, the Lessor Plaintiffs settled their claims against Devon, and the trial court dismissed those claims. The parties then moved to sever Devon's cross-claim against Apache into a separate suit, which the trial court granted. The trial court then entered a take-nothing final judgment in Apache's favor, in which the trial court found that "Apache is not obligated under the Texas Natural Resources Code to pay royalties to [the Lessor Plaintiffs] on oil and gas proceeds" from the wells that Apache drilled.
Analysis
In a single issue on appeal, Devon argues that the trial court erred when it *261 granted Apache's motion for summary judgment, denied Devon's motion for summary judgment, and entered a final judgment in Apache's favor on the issue of which party owed royalty payments to the Lessor Plaintiffs. Devon asserts that the trial court erred because Section 91.402 of the Natural Resources Code mandates that Apache directly pay the Lessor Plaintiffs royalty payments due under the leases between Devon and the Lessor Plaintiffs.
A trial court must grant a motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c) ; Lear Siegler, Inc. v. Perez , 819 S.W.2d 470, 471 (Tex. 1991). In order for a defendant to be entitled to summary judgment, the defendant must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. Am. Tobacco Co. v. Grinell , 951 S.W.2d 420, 425 (Tex. 1997).
We review the granting of a motion for summary judgment de novo. Natividad v. Alexsis, Inc. , 875 S.W.2d 695, 699 (Tex. 1994). When reviewing a summary judgment, we consider all the evidence and take as true all evidence favorable to the nonmovant. Am. Tobacco , 951 S.W.2d at 425 ; Nixon v. Mr. Prop. Mgmt. Co. , 690 S.W.2d 546, 548-49 (Tex. 1985). Additionally, statutory interpretation is a question of law that we review de novo. Sw. Royalties, Inc. v. Hegar , 500 S.W.3d 400, 404 (Tex. 2016).
In many respects, this case is a matter of defining the various relationships among the parties. The critical relationship is the one between Apache and the Lessor Plaintiffs. Had the Lessor Plaintiffs not leased their interests in the mineral estate to anyone, they would have been cotenants of the mineral estate with Apache because, "[i]n Texas, a typical oil and gas lease actually conveys the mineral estate (less those portions expressly reserved, such as royalty) as a determinable fee." Luckel v. White , 819 S.W.2d 459, 464 (Tex. 1991). Thus, Devon is Apache's cotenant in the mineral estate because the Lessor Plaintiffs conveyed their undivided interests in the mineral estate to Devon.
As between Devon and Apache, the rules of equitable accounting between cotenants of the mineral estate are well established:
It has long been the rule in Texas that a cotenant has the right to extract minerals from common property without first obtaining the consent of his cotenants; however, he must account to them on the basis of the value of any minerals taken, less the necessary and reasonable costs of production and marketing.
Byrom v. Pendley , 717 S.W.2d 602, 605 (Tex. 1986) ; see also Cox v. Davison , 397 S.W.2d 200, 201 (Tex. 1965) ("The Texas rule is that a cotenant who produces minerals from common property without having secured the consent of his cotenants is accountable to them on the basis of the value of the minerals taken less the necessary and reasonable cost of producing and marketing the same.").
This appeal focuses on whether Apache had statutory liability for paying royalties directly to the Lessor Plaintiffs pursuant to their leases with Devon. Devon's reliance on a statute is understandable because, under the common law, Apache's liability for paying royalties to the Lessor Plaintiffs under their leases to Devon is by no means established. See Caleb A. Fielder, Blood and Oil: Exploring Possible Remedies to Mineral Cotenancy Disputes in Texas , 50 Tex. Tech L. Rev. 173, 199-202 (2017) (noting that this is a question that has not been expressly answered by *262 case law and opining that the royalty, if any, owed to the third-party lessor (i.e., the Lessor Plaintiffs in this case) would be owed by the nonparticipant lessee (i.e., Devon) ). As noted by Fielder:
Moreover, as between the driller and the nonparticipant, one would be hard-pressed to argue that the drilling party is responsible for the royalty payments of his cotenant's lessor. First, the drilling party in this scenario has no lease with the nonparticipant's lessor. He is a stranger to the nonparticipant's contract and has made no covenants, implied or otherwise. Moreover, because it is undisputed that the operator owes his non-drilling cotenant nothing until he has recouped his reasonable and necessary expenses, it would strain credulity to argue that the operator now owes him royalty merely by virtue of the fact that the cotenant has leased to a third party. Each owner in a cotenancy acts for himself and no one is the agent for the other nor has any authority to bind the other merely because of the relationship[.] Lastly, obligating the drilling party to pay his nonparticipating cotenant's royalty burden would create an opportunity for abuse. In an aggressive cotenancy scenario, the nonparticipating cotenant and his lessor could simply amend their lease to create an inordinately large royalty.
Id. at 202 (internal quotations and footnote omitted).
Devon contends that Section 91.402(a) of the Texas Natural Resources Code required Apache to pay royalties directly to the Lessor Plaintiffs immediately after production occurred. Section 91.402(a) states as follows:
The proceeds derived from the sale of oil or gas production from an oil or gas well located in this state must be paid to each payee by payor on or before 120 days after the end of the month of first sale of production from the well. After that time, payments must be made to each payee on a timely basis according to the frequency of payment specified in a lease or other written agreement between payee and payor.
NAT. RES. § 91.402(a). Accordingly, the critical inquiry is whether Apache and the Lessor Plaintiffs have a "payor-payee" relationship as those terms are defined in the applicable statutes.
Section 91.401(2) defines "payor" as follows:
[T]he party who undertakes to distribute oil and gas proceeds to the payee, whether as the purchaser of the production of oil or gas generating such proceeds or as operator of the well from which such production was obtained or as lessee under the lease on which royalty is due. The payor is the first purchaser of such production of oil or gas from an oil or gas well, unless the owner of the right to produce under an oil or gas lease or pooling order and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas are to be paid by the first purchaser to the owner of the right to produce who is thereby deemed to be the payor having the responsibility of paying those proceeds received from the first purchaser to the payee.
NAT. RES. § 91.401(2) (West 2011). Section 91.401(1) of the Natural Resources Code defines "payee" as "any person or persons legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state." Id. § 91.401(1).
Devon contends that Apache is a "payor" because Apache was the "operator of the well from which [oil and gas] production was obtained." Id. § 91.401(2). Devon also contends that the Lessor Plaintiffs *263 were "payees" because they were "legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state." Id. § 91.401(1). We disagree that Apache and the Lessor Plaintiffs had a payor-payee relationship under the statute.
When we construe a statute, our primary objective is to ascertain and give effect to the legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (West 2013) ; see TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011). "To discern that intent, we begin with the statute's words." TGS-NOPEC , 340 S.W.3d at 439 ; see GOV'T CODE § 312.003. "If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage." TGS-NOPEC , 340 S.W.3d at 439. If a statute is ambiguous, we adopt the interpretation the statute's plain language supports unless such an interpretation would lead to absurd results. Id. We must consider statutes as a whole rather than as isolated provisions. Id. Additionally, "[w]e presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." Id.
In construing the definition of "payee" in Section 91.401(1) of the Natural Resources Code, the phrase "legally entitled to payment" is significant. NAT. RES. § 91.401(1). Similarly, in construing the definition of "payor," the word "undertakes" is significant. The dictionary defines "undertake" as "[t]o take on an obligation or task." BLACK'S LAW DICTIONARY 1759 (2014); see Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n , 519 S.W.3d 113, 129 (Tex. 2017) (stating that, to "determine the ordinary meaning of statutory terms, 'we typically look first to their dictionary definitions' " (quoting Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n , 511 S.W.3d 28, 35 (Tex. 2017) ) ). Thus, when we read subsections (1) and (2) together, it is clear that, in order to qualify as a "payor" who owes a "payee," the "payor" must have "undertake[n]"-set out to obligate itself-to the "payee" in some way. See In re C.J.N.-S. , 540 S.W.3d 589, 591 (Tex. 2018) (per curiam) ("Courts are to analyze statutes 'as a cohesive, contextual whole....' " (quoting Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc. , 521 S.W.3d 749, 754 (Tex. 2017) ) ).
Hester clearly would be a "payee" of Apache because Hester is "legally entitled to payment" from Apache due to the terms of their lease. NAT. RES. § 91.401(1) ; see id. § 91.401(2). In other words, Apache set out to legally bind itself to Hester and, therefore, "undertook" to distribute a portion of the proceeds of its wells to her. However, the Lessor Plaintiffs are not "payees" of Apache because Apache never "undertook" to enter into a legally binding relationship with them, such that the Lessor Plaintiffs were then "legally entitled to payment" from Apache. Although Apache was an "operator of [a] well from which [oil or gas] production was obtained," it did not "undertake[ ] to distribute oil and gas proceeds to the" Lessor Plaintiffs. Id. § 91.401(2). Therefore, even if the Lessor Plaintiffs were "payees" under the Natural Resources Code, we do not believe that Apache fits within the statutory definition of "payor" to them.
Devon argues that Texas courts have interpreted the definition of "payor" to include the operator of a well, even if the operator does not have a lease with the royalty owner. Devon cites Prize Energy Res., L.P. v. Cliff Hoskins, Inc. , 345 S.W.3d 537 (Tex. App.-San Antonio 2011, no pet.), for the proposition that Apache's status as a "payor" is unaffected by the lack of a lease with the Lessor Plaintiffs. In Prize Energy , BP, as an unleased mineral cotenant, owned a 25% mineral interest *264 in the subject land, while various other entities owned the remaining 75% mineral interest. Prize Energy , 345 S.W.3d at 545-46. Later, BP deeded its 25% mineral interest to Hoskins and reserved a 6.25% nonparticipating royalty interest (NPRI) in the mineral estate that it conveyed to Hoskins. Id. at 547.
On appeal, Prize and the Rutherfords-the only well operators on the subject land-argued that they had no duty to pay royalties to BP and that it was Hoskins's sole obligation to pay BP its royalties as part of the consideration for Hoskins's purchase of BP's mineral interest. Id. at 561. The San Antonio Court of Appeals disagreed and held that Prize and the Rutherfords, as operators, were "payors" and that BP was the "payee." Id. at 561-62. Therefore, Prize and Rutherford had an obligation to pay BP its royalties on production. The court concluded:
Thus, part of Prize's and the Rutherfords' obligation as operators on the [land] is to pay the royalty owners their royalties on production. The fact that the trial court ordered Prize and the Rutherfords to pay the ... royalties directly to BP as the royalty owner, rather than to Hoskins as the mineral interest owner, does not constitute an abuse of discretion; in fact, it is consistent with the [Natural Resources Code].
Id. (citation omitted).
Devon contends that Prize Energy is the seminal case on Chapter 91 and that Prize Energy demonstrates that Apache's "payor" status is unaffected by the lack of a lease with the Lessor Plaintiffs. Devon asserts that Prize Energy only differs materially from this case in that it addressed a nonparticipating royalty interest instead of the standard lessor's royalty interest and that this is a distinction without a difference. We disagree. We believe that, because the royalty interest in Prize Energy was an NPRI and not a royalty interest reserved by a lease, that distinguishes Prize Energy from this case.
Overriding royalty interests and lease royalty interests "are creatures of the oil and gas lease." JOSEPH SHADE & RONNIE BLACKWELL , PRIMER ON THE TEXAS LAW OF OIL & GAS 20 (5th ed. 2013). Additionally, "[s]ince the NPRI does not relate to a particular lease, unlike the [lease royalty interest] or the [overriding royalty interest], it does not end when the lease ends, rather it is generally tied to the land." Id. Therefore, in Prize Energy , Prize and the Rutherfords set out to obligate themselves, i.e., undertook to distribute oil and gas proceeds to BP when they drilled wells on land in which BP had an NPRI. Thus, it did not matter in that case that Prize and the Rutherfords did not have a lease with BP; rather, BP was a payee as soon as someone drilled a producing well on the land.
Therefore, we conclude that Apache and the Lessor Plaintiffs did not have a payor-payee relationship under the Texas Natural Resources Code because Apache did not undertake to make payments to the Lessor Plaintiffs. In reaching this holding, we note that it is consistent with Section 91.402(a), which provides that, "on or before 120 days after the end of the month of first sale of production from the well," "payments must be made to each payee on a timely basis according to the frequency of payment specified in a lease or other written agreement between payee and payor. " NAT. RES. § 91.402(a) (emphasis added). We overrule Devon's sole issue on appeal.
This Court's Ruling
We affirm the judgment of the trial court.